McGREGOR, Appellant, v. J. A. WARE CONSTRUCTION COMPANY.

Division One, May 24, 1905.

1. **REFERENCE: Finding of Fact; Action at Law.** The findings of fact by a referee in an action at law stand upon the same footing, in an appellate court, as the verdict of a jury. Where there is substantial evidence to support that finding, the appellate court will not interfere therewith.

2. ———: ———: ———: **Excavation: Loose Rock or Earth.** Where a contractor was to receive thirty cents a cubic yard for removing loose rock and nine cents for removing earth, and bases his claim for the work done on an allegation that the substance removed was loose rock, on a finding by the referee that it was earth, there being substantial evidence to support that finding, the appellate court will not hold that the preponderance of the evidence showed that it was loose rock, but will accept the finding of the referee on that point.

3. ———: **General and Special: Specifications: Part of Subcontractor's Contract.** Where certain specifications, which gave the chief engineer the power to determine whether material excavated was loose rock or earth, were made a part of the contract for the excavation between the contractor and the subcontractor, the latter in his suit alleging a wrong classification of the material by him removed is bound by those specifications. The fact that the general specifications contained in the contrac-

tor's contract followed the particular enumerations contained in the subcontractor's contract under the head of "specifications," did not make the provisions of the general specifications any the less a part of the specifications of the subcontractor's contract.

4. ———: Engineer As Arbitrator: Reasonable Classification. Where an excavation contract invests the engineer with the power of determining whether the substance removed is loose rock or earth, his determination of the issue is binding on the parties to the contract, unless fraud or mistake on his part is alleged and proved.

5. ———: ———: Acceptance of Payment: Receipt: Estoppel. Where the subcontractor, after the engineer had decided that the substance by him removed under his excavation contract was earth and not loose rock, received from the contractor the money for the work and kept it, knowing it was sent to him as full payment according to the engineer's decision, he is not thereafter in a position to question the engineer's decision, although he refused to receipt for the work according to the contractor's request when the money was sent to him.

6. ———: ———: Mistake: Allowance: Compromise: Issues Framed. The engineer testified that certain clay material was neither loose rock nor earth, but that he would have classified it as loose rock had he not understood that plaintiff had agreed that it should not be so classified, but that knowing it was a difficult and expensive material to handle, he had, in order to do justice to plaintiff, allowed him $600 therefor, outside the specifications. The defendant in settling with plaintiff did not send him this $600, but afterwards offered to pay it to him by way of compromise, which offer plaintiff rejected, and brought this suit for $4,711.56 for a wrongful classification of various materials as earth, alleging them to be loose rock, and not for this allowance. Held, that having framed his issues and not having predicated his right to recover the $600 on the acts of the chief engineer, he is not entitled to judgment therefor.

Appeal from St. Louis City Circuit Court.—*Hon. John A. Talty*, Judge.

AFFIRMED.

*Abbott & Edwards* for appellant.

(1) The referee erred in finding that clause 16 was a part of the specifications which formed a part of the contract. (2) The referee erred in finding that

plaintiff excavated no loose rock. (3) The referee erred in finding that both Mr. Cole and Mr. Moore, the engineers, had decided that plaintiff had excavated no loose rock, but that all material excavated by him was earth. (4) Upon undisputed testimony, the referee should have rendered judgment in plaintiff's favor for $600 and costs.

*Collins & Chappell* for respondent.

(1) The referee as trier of the facts, having found in favor of defendant upon an issue of fact, and there being substantial evidence to sustain the finding, this court will not examine the evidence for the purpose of weighing it to ascertain whether in its opinion the finding was in favor of the right party. Garneau v. Herthel, 15 Mo. 191; Chadwick v. Bumpas, 45 Mo. 111; Brown v. Railroad, 50 Mo. 461; State v. Hert, 89 Mo. 590; Bray v. Kremp, 113 Mo. 552; State v. Richardson, 117 Mo. 586; Davis .v. Railroad, 46 Mo. App. 180; O'Hara v. Iron & Foundry Co., 66 Mo. App. 53. Where the finding is by the court or a referee the same rule obtains. Beck v. Pollard, 55 Mo. 26; Handlan v. Mc-Maules, 100 Mo. 124; Vogt v. Butler, 105 Mo. 479; Bissell v. Ward, 129 Mo. 439; State ex rel. v. Purcell, 131 Mo. 312. (2) Under the pleadings the finding of the chief engineer in classifying the material excavated by plaintiff as earth is conclusive upon plaintiff. The contract sued on made the specifications of the Laclede Construction Company a part of the contract. These specifications provided that the chief engineer should in all cases be the final judge as to the class to which any material belongs. The specifications give certain rules to aid and govern the chief engineer in making the proper classifications. All of this is set up in the answer and, in addition thereto, it is therein alleged that the chief engineer, acting under said contract and specifications, did classify the material sued for as

earth. The replication simply denies these allegations of the answer. Therefore, the issue presented by the pleadings was whether the chief engineer had classified said material as earth. The fact that he did so classify it was established by the uncontradicted evidence of defendant. The stipulation in a contract that an engineer's estimate and classification should be final is valid and binding. Ranger v. Railroad, 5 H. L. 88; Herrick v. Railroad, 27 Vt. 673; Kidwell v. Railroad, 11 Gratt. 676; Grant v. Railroad, 51 Ga. 352; Railroad v. Veeder, 17 Ohio 396; Sweet v. Morrison, 116 N. Y. 19; Railroad v. March, 114 U. S. 549; Williams v. Railroad, 112 Mo. 463; Railroad v. Price, 138 U. S. 185; Eldridge v. Fuller, 59 Mo. App. 44; Neenan v. Donoghue, 50 Mo. 493; Muckler v. Railroad, 62 Mo. App. 677; Howard County v. Baker, 119 Mo. 397. While it was competent for plaintiff to attack the classification made by the chief engineer for fraud, gross error or mistake, it is necessary both to plead and to prove the same. Williams v. Railroad, 112 Mo. 463; McCormick v. St. Louis, 166 Mo. 315. (3) Appellant was not entitled in this action to recover the sum of $600 allowed by the chief engineer to defendant. After the final estimate had been made and plaintiff had objected to the classification the chief engineer, basing his action, not upon any rights under the contract, but in recognition of a hardship on plaintiff, and by way of compromise, allowed to defendant the sum of $600 over and beyond the estimate, this sum was by defendant tendered to plaintiff, but it was refused. Plaintiff did not base his right to recover upon the classification, estimate and award of the chief engineer, but claims and contends that under the contract, notwithstanding the finding and award of the chief engineer, he was entitled to recover for the material excavated by him as loose rock. He must recover, if it all, upon the case as made in his petition and upon the theory presented in the trial court.

MARSHALL, J.—This is an action to recover $4,711.56 for work done by the plaintiff as a subcontractor under the defendant for doing certain excavation in the construction of the St. Louis, Peoria and Northern Railway, the defendant company being a subcontractor under the general contractor with the Railroad Company. The case was tried by a referee, who found the facts in favor of the defendant and recommended a judgment in its favor. The plaintiff filed exceptions to the referee's report, the circuit court overruled the exceptions and entered judgment for the defendant, and after proper steps the plaintiff appealed.

### THE ISSUES.

The petition is in two counts, but the plaintiff makes no point in this court as to the judgment against him on the second count, and, therefore, no further notice will be taken of that count.

The first count alleges that on the 28th of May, 1897, the plaintiff entered into a contract with the defendant to do the work required in clearing and grading a portion of said railway, at the following prices: "Earth excavation, 9 cts. per cubic yard; loose rock, 30 cts. per cubic yard; clearing, $20 per acre; over-hauling, 1-2 c. per cubic yard for each additional 100 feet after the first 300 feet of over-haul, the specifications of the Laclede Construction Company being part of and governing said agreement, a copy of said specifications being herewith filed as 'Exhibit A.' "

The petition then alleges that under said contract, the plaintiff excavated 22,436 yards of loose rock, for which defendant had agreed to pay at the rate of 30 cents per cubic yard, or a total of $6,730.80, and that the defendant had only paid plaintiff on account thereof the sum of $2,019.24, leaving a balance due of $4,711.56, for which the plaintiff asked judgment.

The answer is a general denial of all matters not expressly admitted. The answer then admits the execution of the contract referred to in the first count of the petition and the performance thereof by the plaintiff, and then sets up, that among the specifications in the contract of the Laclede Construction Company, which was made a part of plaintiff's contract, it was provided as follows: "Classification of materials: The materials found in the excavation will be classed as solid rock, loose rock and earth, the chief engineer being, in every case, the final judge as to the class to which any material belongs. Solid rock will include all loose boulders containing one cubic yard or more and all hard rock in compact strata or ledges exceeding six inches in thickness, which, in the judgment of the engineer can not be loosened except by blasting. Loose rock will include all loose boulders containing more than three cubic feet and less than one cubic yard, and all materials requiring the use of pick and bar, or which cannot be plowed with a strong 10-inch grading plow, well handled, drawn by a good six-horse team. Earth will include all materials of whatever kind which does not clearly belong to one or the other of the foregoing classes. Whenever rock of any kind is found in the excavation, the contractor shall, at once, notify the engineer in charge, so that he may make the necessary measurements to determine its quantity. If the contractor shall fail to give such notice the engineer may presume that the measurements taken at the time he first sees the material in question will give the true quantity. In case disputes or differences shall arise between the parties to this agreement as to the true intent and meaning thereof, or the sufficiency of the performance of any of the work to be done under it, or the classification of the work, or the price to be paid, all disputes and differences shall be referred to the chief engineer of the construction company, who shall

consider and decide the same, and his decision shall be final and binding upon both parties.''

The answer further alleges that Robert Moore was the chief engineer in charge of the work and was the engineer referred to in the contract and specifications and that he made his final estimate of the work done by the plaintiff and classified the materials and allowed the plaintiff for excavation nine cents per yard for earth excavations and awarded to plaintiff a total sum of $21,298.98, as the full amount which the plaintiff was entitled to under his contract, and that the defendant paid the same to the plaintiff after the work was done; that said chief engineer found that all the excavation done by the plaintiff under his contract was earth excavation, and that none of the materials excavated by the plaintiff consisted of loose rock, and the defendant claimed that the final estimate and finding of the chief engineer was final, binding and conclusive upon both of the parties to said contract. The reply to the answer is a general denial.

The case was referred to a referee to try all the issues and report. The referee reported, set out the contract between the plaintiff and defendant and the portions of the specifications contained in the contract of the Laclede Construction Company, which were made a part of the plaintiff's contract, and that the plaintiff had fully performed his contract and that the defendant had paid him therefor the sum of $21,298.98. The referee then reported as follows:

"There is no controversy between the parties respecting the quantity of materials excavated by the plaintiff, or the quantity hauled more than 300 feet, nor respecting the prices for the various kinds of materials or other work done by the plaintiff; nor respecting payments made to plaintiff by defendant, but the plaintiff contends that 22,436 cubic yards of the materials excavated by him was loose rock, for the excavation of which he was entitled to 30 cents per cubic yard,

whereas defendant contends that none of said materials was rock but that all of it was earth.

"Defendant paid the plaintiff the contract price for excavating earth, and unless some of the materials was loose rock, the plaintiff has been paid in full.

"I find that plaintiff excavated no loose rock but all material excavated by him was earth; that prior to the bringing of this action, defendant paid the plaintiff in full for all work done by him, in accordance with said contract of May 29, 1897, and as set forth in the answer of defendant, and in accordance with the classifications and final estimate of the engineer as provided in the specifications which form a part of said contract.

"I further find that Robert Moore was the chief engineer referred to in said specifications, and that Robert H. Cole was his assistant, resident engineer in charge of the work done by the plaintiff. Both Mr. Cole and Mr. Moore, the said engineers, decided that plaintiff had excavated no loose rock, but that all material excavated by him was earth."

The referee thereupon recommended judgment for the defendant.

It is not necessary to set out, or even digest, the testimony adduced at the trial before the referee. It is sufficient to say that the testimony on the part of the plaintiff gave some color to the claim that at least a part of the excavation consisted of what is designated in the contract and specifications as loose rock and not earth excavation, while the testimony on the part of the defendant showed that there was no loose rock excavated, but that some of the earth was hard or difficult to excavate, yet did not come within the proper definition of the term, "loose rock," as employed in the contract and specifications. The testimony further showed that the chief engineer and his assistant had classified the excavation as earth excavation, and from month to month had made estimates upon that hypothesis, for which the plaintiff had been paid, and that in

the final estimate the chief engineer found that the excavation was earth and not loose rock, and allowed the plaintiff therefor nine cents per cubic yard, as called for by the contract. The defendant sent the plaintiff a check therefor, together with a copy of the final estimate of the chief engineer. The check amounted to $2,252.08. The plaintiff took the check, had it cashed, kept the money and refused to sign a final receipt based upon the final estimate, but gave the defendant credit for the amount of the check, and brought this suit against the defendant for the difference between the amount received by him, based upon the allowance of nine cents per cubic yard, and thirty cents a cubic yard, which was the contract price for the excavation of loose rock.

The testimony before the referee further disclosed that the contract between the Laclede Construction Company and the defendant, required the defendant to do the work according to certain specifications in said contract contained. Said specifications, after setting forth particularly the different character of work and materials to be done and furnished, concluded with what is designated in the contract as ''general stipulations,'' among which general stipulations was a provision as follows: ''In case any dispute arises between the parties to this agreement as to the true intent and meaning thereof, or the sufficiency of the performance of any of the work to be done by it, or the classification of the work, or the price to be paid, all such differences and disputes shall be referred to the chief engineer of the construction company, who shall consider and decide the same, and his decision shall be binding and final upon both parties.''

The specifications also contained the provisions set out in the defendant's answer, among which were, that the chief engineer should be the final judge as to the class to which any materials found in the excavation belonged, and that when any rock was found in

the excavation, the contractor should at once notify the engineer in charge so that he might make the necessary measurements to determine its quantity.

In September or October, 1897, the plaintiff notified Mr. Cole, the resident engineer, that he had found very hard earth, which could not be plowed with a ten-inch plow and a team of six horses, but that it took eight horses to plow it, and that the engineer said it was necessary to use eight horses, but that it was not loose rock. The plaintiff further testified, that in November he asked the engineer to measure it as loose rock, and that the engineer refused to do so, and that he, the plaintiff, made no claim to the defendant that the material was loose rock until after he finished the work. The engineer offered to allow the plaintiff pay for the extra horses used on the plow. After the work was completed the Laclede Construction Company allowed the defendant $600 extra, on account of the difficulty experienced in the excavation. The defendant offered to give that sum to the plaintiff by way of compromise if he would accept it as a settlement in full of his claim, but the plaintiff refused to take it, and, instead, brought this suit, predicating his right of recovery upon the theory that the excavation was loose rock and not earth, and upon the further theory that the decision of the chief engineer was not binding upon the plaintiff, because that feature of the contract of the Laclede Construction Company was not made a part of his contract with the defendant.

The referee first found, as a matter of fact, that the excavation was of earth and not of loose rock, and then further found that the chief engineer had decided that the excavation included no loose rock, and that all the material excavated was earth.

## I.

The plaintiff's first contention is that the referee erred in finding the fact to be that the excavation was earth and not loose rock.

The findings of fact by a referee in a case at law stand upon the same footing, in an appellate court, as the verdict of a jury. It is not the practice of this court to review a finding of fact by a referee or jury in an action at law. This court looks to the facts, in such a case, only far enough to ascertain whether there is any substantial testimony to support the finding, and where such is the case it does not interfere with a finding of fact. [Handlan v. McManus, 100 Mo. 124; Vogt v. Butler, 105 Mo. 479; Bissell v. Warde, 129 Mo. 439; State ex rel. Friedman v. Purcell, 131 Mo. 312; James v. Ins. Co., 148 Mo. l. c. 15-16.]

There was substantial evidence supporting the finding of fact by the referee in this case, and that forecloses that question in this court.

## II.

The second error assigned by plaintiff is that the ruling of the referee in holding that the "general stipulations" in the contract of the Laclede Construction Company, which was part of the plaintiff's contract with the defendant, and which conferred upon the chief engineer power to settle all disputes and differences between the parties as to the meaning of the contract, the sufficiency of the performance of the work done under it, the classification of the work and the price to be paid, and made his decision final and binding upon both parties, was a part of the plaintiff's contract with the defendant and therefore binding upon the plaintiff, was erroneous.

The gravamen of this contention is, that the contract of the Laclede Construction Company required the work to be done according to certain "specifications," under which term the manner of doing the work

and the materials to be used in the doing of it, were particularly set out. Then the contract contained seventeen paragraphs or sections, which were grouped under the general designation or heading of "General Stipulations," among which was that which conferred the power aforesaid upon the chief engineer to settle disputes and differences, and determine the classification of the work, and the plaintiff contends that such general stipulations constituted no part of his contract with the defendant because his contract provided that "the specifications of the Laclede Construction Company to be made a part of it, and governing the contract," and that the general stipulations did not constitute a part of the specifications of said contract.

The determination of this contention would be of no particular benefit to the plaintiff, inasmuch as the referee found the fact to be exactly the same as the chief engineer had adjudged the fact to be. Aside from this, however, the contention is not well taken. The general stipulation set forth in the contract aforesaid constituted a part of the specifications. The fact that they followed the particular enumerations contained in the contract under the head of Specifications, for the doing of the work, did not make the provisions of the general stipulations any the less a part of the specifications. The general stipulations were intended to cover matters not particularly specified in the specifications, but they constituted a portion of the specifications.

### III.

However, without the aid of such stipulations, the result in this case must be the same, even if the specifications alone constitute a part of the plaintiff's contract, for the specifications expressly provided as follows: "Classification of Materials—The materials found in excavations will be classed as solid rock, loose rock and earth, the engineer being in every case the

final judge as to the class to which any material belongs." Then follows a definition of what shall be the meaning of solid rock, loose rock and earth, and the specifications then provide that, "whenever rock of any kind is found in the excavation the contractor shall at once notify the engineer in charge, so that he may make the necessary measurements to determine the quantity. If the contractor shall fail to give such notice the engineer may presume that the measurements taken at the time he first sees the material in question, will give the true quantity." The power thus conferred by the specifications upon the chief engineer was broad and comprehensive enough to make his decision upon the question here involved, as to whether the excavation sought to be recovered for was loose rock or earth, as binding upon the parties to the contract, as was the power conveyed under the general stipulations of the contract.

There is no question in this case as to the *bona fides* of the chief engineer in making the classification. No fraud or mistake on the part of the engineer is alleged or attempted to be proved. This being true, the decision of the chief engineer is binding upon the parties. [Williams v. Railroad, 112 Mo. l. c. 487; Idem, 153 Mo. l. c. 497; McCormick v. St. Louis, 166 Mo. 315.]

Moreover, the plaintiff is in no position in this case to avail himself of this contention even if it was well founded, for when the chief engineer made his final estimate the defendant transmitted it to the plaintiff, with a check for $2,252.08, the exact amount found to be due the plaintiff by the chief engineer, and the plaintiff took and kept the money. The plaintiff did not sign the receipt therefor, but when he took the money knowing that the defendant transmitted it to him as payment in full for all of the work done under his contract, he estopped himself from thereafter claiming that such payment did not constitute a payment in full

under the contract. It was not competent, proper or legal for the plaintiff to take the amount thus transmitted to him under such circumstances, and apply it as only a part payment of what he claimed the defendant owed him. If he was not satisfied with the sum thus paid, good faith required him to refuse to accept the money, to return it to the plaintiff, and to bring suit for the amount he claimed to be due him. His conduct in retaining the money clearly estopped him from now claiming that the amount was not the true amount due him under his contract. The plaintiff knew at that time that both the engineer and the defendant had, prior to that time, refused to classify the materials excavated as loose rock, and had expressly told him that they regarded it as earth. In fact, the plaintiff, himself, admits that he made no claim to the defendant that the material was loose rock until after he had finished the work, and that when he did make the claim the defendant informed him that the material was not loose rock, even though it required eight horses instead of six to plow it.

## IV.

The plaintiff contends that the referee and the circuit court erred in not allowing him $600 at any rate, because the chief engineer testified that if he had not understood that the plaintiff had agreed to the classification of 2400 yards as earth and not as loose rock he would probably have classified it as loose rock and not as earth. The item of the allowance to the defendant being, "Allowance for bad material, section 39, $600.00."

The testimony of the chief engineer on this point is as follows: "That was material which it was extremely difficult if not impossible to classify. On the recommendation of Mr. Cole, and his direct statement that it was concurred in by Mr. McGregor, it was put in that way. The material was rather wet clay than

otherwise. It could not be classified as loose rock. It was wet material, rather leathery sort of substance, very difficult to handle, and of course more expensive to handle; as a way of getting at a proper allowance this $600.00 was put in. It was carefully considered by me in connection with Mr. Cole, who agreed that this was a fair test and the most accurate way of doing it." On cross-examination the witness testified as follows: Question. "If as a matter of fact there was any material excavated by Mr. McGregor that required the use of the pick and bar, it should have been classified as loose rock, should it not, under these specifications?" Answer. "I should have classified it as loose rock, except for the direct statement of Mr. Cole, that Mr. McGregor had agreed to the statement, which was equivalent, so that instead of stating this as 2,400 yards of loose rock, it was stated as $600.00 worth of bad material. They were considered equivalent statements. If I had understood at the time that this was not agreed to by Mr. McGregor, it would have been stated in all probability as 2,400 yards loose rock, and not as stated here. It is a difference of statement, and not a difference in the thing."

On redirect examination the witness said, that he saw the excavation of the material in controversy in actual progress at one time, that there were several hundred feet of it exposed. "I should not, at the time I saw it, classify it as loose rock. The material was more expensive to move than earth. Under consideration of all the facts, it seemed to me getting at it in the most just and fair way was to make an allowance of $600.00, which I did. In the classification of materials which run into each other and lines are not marked, there is nothing more difficult, and nothing calling for greater doubt and range of discretion than the classification of materials which are not distinctly separated. It is a question about which there was a doubt as to

whether the controverted material was not properly, strictly and clearly to be classified as loose rock. The material might have been classed as earth under the specifications, but I should have been satisfied that it was not doing Mr. McGregor quite the fair thing, as it was more expensive than ordinary earth. I made the allowance of $600, outside of the specifications, in order to do exact justice as near as I could get it.''

Thus it will be observed that on direct examination the witness said that the material could not be classified as loose rock. On cross-examination he said, he probably would have classified it as loose rock if he had not understood that the plaintiff had agreed to the statement of Mr. Cole that it was not loose rock. On re-examination he said, there was a doubt about whether it should not be classified as loose rock, but that it might have been classed as earth under the definitions of the specifications, and that because it was more expensive to excavate than earth, he had made an allowance of $600.00 outside of the specifications, in order to do exact justice.

It cannot, therefore, be fairly said that there is no room for question in this case that the 2,400 yards of the material excavated was loose rock, and therefore the referee, on the undisputed facts, should have allowed that amount to the plaintiff.

The utmost that can be fairly said of the testimony of the chief engineer is, that it leaves the matter in an unsatisfactory condition, and shows that he felt that while the plaintiff's claim that the material was properly loose rock, was not tenable, still it was something more than mere earth excavation, and therefore, outside of the specifications, he made an equitable allowance of $600.00 therefor. But, however the fact in that regard may have been, the plaintiff is not entitled to recover the $600.00 so allowed by the chief engineer to the defendant company, for the reason that prior to the institution of this suit, the defendant offered, by

way of compromise, to· pay the plaintiff said $600.00 and he refused to accept it, and brought suit for $4,711.56, and not for the $600.00 thus allowed by the chief engineer as an equitable settlement outside of the specifications. The plaintiff having thus framed his issues, and not having predicated a right to recover the $600.00 by reason of the acts of the chief engineer, he is not, under the issues joined, entitled to a judgment therefor in this case. In addition to this, this case was not tried by the plaintiff upon this theory either before the referee or in the circuit court. The exceptions filed by the plaintiff to the referee's report, and the motion for new trial, filed after the report was approved by the circuit court, are absolutely barren of any such claim by the plaintiff. The point here made was not called to the attention of the referee or the trial court, so far as the record discloses, and consequently is not available to the plaintiff on this appeal. For these reasons the judgment of the circuit court is affirmed.

All concur.