## Stewart, Administrator William Blanks, Deceased v. Wisconsin Steel Company.

(Decided March 28, 1919.)

### Appeal from Harlan Circuit Court.

1. Master and Servant—Benefits under Relief Department.—It is a condition precedent to the right to recover benefits under a relief department of the employer that the employe or his estate comply with the requirements and terms specified by said department.

2. Master and Servant—Benefits Under Relief Department.—One violating the rules and regulations of a relief department is not entitled to recover any benefits thereunder, it being expressly provided that breach of the rules will bar the right to such benefits.

3. Master and Servant—Benefits Under Relief Department.—An employer proposing to give benefits to an employe has the right to fix the terms and conditions under which the employe may be entitled to receive such benefits.

ZEB A. STEWART for appellant.

SAMPSON & SAMPSON for appellee.

OPINION OF THE COURT BY JUDGE QUIN—Affirming.

William Blanks, a boy about 17 years of age, was employed December 1, 1915, by appellee to work in its mines at Benham, Kentucky; on the 6th of December, after he had quit work for the evening and had started towards the outside of the mine, he was killed by an explosion; he was found, in an unconscious condition, with his body across the track; he was placed upon a stretcher but expired in a few minutes, and before reaching the outside of the mine.

The appellee company maintained what is called an ''Industrial Accident Department,'' which appears to be

a plan or system adopted to provide compensation for its injured employes. This was before the passage of the Workmen's Compensation Act, approved March 23, 1916.

In the present suit the appellant, as administrator of the estate of William Blanks, is not seeking damages on account of the negligence of the appellee, but is seeking to recover the amount claimed to be due decedent's estate under the terms and conditions of the Industrial Accident Department, which for brevity will be here-after referred to as the I. A. D.

After sustaining a demurrer to the petition as amended, a second amendment was filed and on the issues thus joined a trial was had and at the conclusion of appellant's evidence there was a directed verdict for the company, from which judgment an appeal has been prosecuted. Appellant contends his decedent was entitled to the benefits of the I. A. D. as a part of his contract of employment, the contention of appellee being that under the plan of the I. A. D. no premiums or other payments were made by the employes, and it was optional with them whether they would take the benefits of the plan or elect to prosecute their claims for damages and no benefits accrued to any employe until after disability, nor, in the event of death, to their estate until the disabled employe or his executor or administrator filed a written election to accept the benefits of the I. A. D., and waive any and all right or claim to damages. To the better understanding of the questions involved we will advert to such of the provisions of the I. A. D. as appear to be pertinent to this appeal.

Sec. 1 thus defines membership: "Employes of the above named companies, who are employed in the works, twine and lumber mills and mines, are entitled to the benefits of this plan, except those employed in the states where the company pays or may decide to pay compensation for industrial accidents in accordance with the provisions of Workmen's Compensation Laws."

Sec. 2 describes the purpose of the plan as the "prompt, definite and adequate compensation for injuries resulting from accidents occurring to them while engaged in the performance of their duties; and also to provide compensation to the widow, child, children and relatives, who may be dependent upon any employe whose death results from such accident."

Sec. 14, under death benefits, are these provisions: "All death benefits shall be paid to the administrator or executor of the deceased employe, in trust for his widow, children, or other relatives, who were dependent.

"No death benefits shall be paid unless death results within fifty-two weeks from the date of the accident, nor unless a written claim therefor shall be filed by the executor or administrator of the deceased employe with the board of management within three months after the employe's death."

Under section 17, defining disability, are these provisions: "No benefits shall be paid unless the injury or death is caused, directly or solely, by an accident arising out of and in the course of the employment. . . . Benefits shall not be paid for any injury or death resulting from or caused, directly or indirectly, wholly or in part, by the intoxication or partial intoxication of the employe (page 13 of booklet) or by his failure to use the safety appliances provided by the company, or by his gross or willful misconduct."

Sec. 20 is as follows: "The acceptance of any of the benefits herein provided shall operate as an election to take said benefit and such further benefits, if any, as may become due under these rules in full satisfaction and release of all claims against the company and all other companies associated in this department, arising out of the injury or death for which such benefits are paid. No person shall receive any benefit without first giving a written instrument evidencing such election and release. The company upon requiring and receiving any such release, shall become obligated to pay all further benefits, if any, which may become due under these rules on account of the injury or death in question.

"No death benefits shall be due or payable unless such release shall have been duly executed by all persons who might legally assert any claim growing out of the death of the employe. The commencing of any legal action whatsoever against any of the companies associated in this department on account of such injury, by the employe, or in the event of his death, by his executor, administrator or personal representative, shall be a bar to the recovery of any and all benefits herein provided; but in such event the employe shall be entitled to have

refunded to him any contributions paid since the receipt by him of disability benefits, and no more.

"The benefits of this plan are offered upon the express condition that all the rules and regulations herein contained shall be faithfully and strictly obeyed by the employes, and a complete compliance with each and all such rules and regulations shall be and is a condition precedent to the right to receive any benefits whatsoever."

There is also in evidence a copy of the rules for the government and operation of the company's mines, approved by the Chief Inspector of Mines, sec. 35 of said rules being as follows: "The practice of carrying explosives and caps in the same package, or of storing them together is absolutely prohibited. Explosives and tools must not be placed in or upon any empty or loaded cars."

To be entitled to the benefits of the I. A. D. employes must comply with the terms and conditions thereof, as well as the rules and regulations in regard to the operation of the mine, as set forth in Rule No. 35.

Decedent left no widow or children; his mother was living in Mississippi, where she and her husband owned a farm of about 80 acres, she having married her second husband after the death of decedent's father about fifteen years ago. The company telegraphed his mother on the 7th notifying her of her son's death, and asking what disposition to make of the body, and on the 8th they telegraphed and wrote her that it would be impossible to send her the body because the express company required embalming and shipment in an hermetically sealed casket, but these requirements could not be met because there was no undertaker at Benham. In response to a letter from decedent's mother the company, on February 15, 1916, explained to her how her son was killed, stating that the company was not responsible for the accident. It appears from this letter that the son had a stick of coalite powder and some dynamite caps in his possession and in some way the caps were discharged exploding the dynamite or powder, thus causing his death.

The company again wrote the mother on the 22nd of February. Responsive letters from the mother were tendered, but while the proper foundation was not laid for their introduction, they are not of sufficient materiality to change the conclusion we have reached.

March 23, 1916, the company received from an attorney at Enterprise, Miss., the home of the mother, a letter stating he had been employed to represent the mother in a claim for damages against the company, and offering to take $5,000.00 in settlement of the claim. The company answered on the 25th, denying responsibility. On the same day, to-wit: March 25th, the above mentioned attorney wrote stating he was authorized to represent the mother and asked for a copy of the rules of the I. A. D.

There is another letter from the attorney under date of March 31, still urging settlement. On the 25th of July, appellant, Zeb A. Stewart, was appointed administrator of decedent's estate, and on the same day notified the company of his appointment, and asked if the company would be willing to settle his claim on behalf of the estate. Failing to effect a settlement he filed the present action August 10.

It was not until after a demurrer had been sustained to the petition and amended petition that appellant on April 19, 1917, filed a second amended petition, in which for the first time he alleged that a written claim or demand had been made upon the company for the payment of benefits under the I. A. D., claiming that a demand had been made by the mother, the attorney for the mother, and by the administrator, and also alleging that he elected to sue for benefits under the I. A. D. and released any claim which the estate might have to recover against the company for damages for the death of his decedent. No written demand for benefits under the I. A. D. was made on the company unless it be found in the telegrams and letters hereinabove referred to, and we do not think that in any one of these is there such a demand as is contemplated by the provisions of the I. A. D. It will be noticed that under sec. 14 no benefits will be paid to persons other than the administrator or executor of the estate of a deceased employe in trust for the widow, children or dependent relatives, nor will any benefits be paid "unless a written claim therefor be filed by the executor or administrator of the deceased employe with the board of management within three months after the employe's death." This was not done. As a matter of fact the administrator was not appointed for more than seven months after the accident to his decedent.

Furthermore, under sec. 20, "No person shall receive any benefit without first giving a written instrument evidencing an election to release all claims against the company arising out of the death." This was not done until April 19, 1917, when the second amended petition was filed, and which was more than sixteen months after the accident. Even though proper notice had been given we do not think appellant was entitled to recover.

Under section 20 the benefits of the plan are offered upon the express condition that all the rules and regulations shall be faithfully and strictly obeyed by the employes, "and a complete compliance with each and all such rules and regulations shall be and is a condition precedent to the right to receive any benefits whatsoever."

Rule 35 expressly and absolutely prohibits the practice of carrying explosives and caps in the same package, or storing them together. The death of decedent, according to the evidence, was due to a violation of this rule. When decedent was employed by the company he was given a copy of the I. A. D. and told to study it, and these rules were explained to him by the assistant mine foreman.

In addition to rule 35 the mine foreman testifies there was another rule that a man must carry the explosives, consisting of coalite powder and caps, separately, and the men were requested to wrap all caps in separate pieces of paper and not to carry any two caps together. The witness said he read this rule to decedent. The promulgation of this rule was due to the fact that powder and caps are liable to explode when wrapped together, and wrapping them separately makes them safe. The witness further testified that in his opinion decedent was an experienced miner.

The benefits of the I. A. D. were in reality a gratuity on the part of the company—a proposal to pay benefits under certain specified conditions, the consideration to be received by the company being the release from all claims for damages—and it was purely optional with the employe whether he accepted their benefits and conditions or not. It did not become a contract until its terms were accepted and complied with by the employe. Neither the employe nor the company is bound by any provision of the I. A. D. until the employe or the representative of his estate, in the event of death, gives to the company

a written acceptance or notice of their election to take under the I. A. D., and until this acceptance is given and election made the employe is privileged to prosecute his suit for damages against the company for any injuries received. In our judgment, appellant has not shown himself entitled to the relief sought. The terms and conditions of the I. A. D. were not met. There was in fact no contract. Within the meaning of the plan no written claim was made in three months, nor was there an election within that time evidencing an intention or desire to accept the benefits of the I. A. D., and to release the employer from all claims for damages. Decedent was not injured in the performance of his duties; on the contrary he was disobeying a rule enacted for the safety of himself and coworkers, a violation or breach of which was fraught with so much danger.

Counsel has cited a number of cases in support of his contention, but none of them involves a plan similar to the I. A. D. In each of the authorities relied upon it will be found the employe signed an application for membership or paid periodical sums or dues, thus entitling him to the benefits claimed, such as is instanced by the payment of a premium on a policy of insurance.

The contract sued on in each of the above cases will be found merely an obligation of the company to take charge of the fund raised by voluntary contribution, to administer it at its own expense and to guarantee that it shall be sufficient to furnish the specified relief. Such contract is not one of insurance, but has only the elements of a labor contract. Cooley on Insurance, p. 22. For example, reliance is placed on Donald v. Chicago, B. & Q. R. Co., 93 Iowa 284, 61 N. E. 971. In this case the fund was obtained by a monthly assessment of its members, an amount being deducted from their salary, and the insured in this case agreed to be bound by the regulations of the relief department. And so in Petty v. Brunswick & W. Ry. Co., 109 Ga. 666, 35 S. E. 82, to entitle an employe to participate in any of the forms of relief afforded by the department he was required to execute a prescribed form of application. Stipulated benefits were payable only upon compliance with the express condition that "there be first filed with the superintendent and chief surgeon of the relief and hospital department releases satisfactory to him, releasing each and all of the several companies constituting the Plant System from

all claims for damages from such injury or death, signed by all persons who might bring suit for damages, or those legally competent to release for them." In the other case of Eckman v. Chicago, B. & Q. R. Co., 169 Ills. 312, 48 N. E. 496, the same department is involved here as in the Donald case, *supra*, and from which opinion we quote as follows: "Each member contributes monthly a specified sum according to the class to which he belongs, which is deducted from his wages, and placed to the credit of the relief fund. All employes of the company who pass a satisfactory medical examination are eligible for membership. . . .

"The regulations also provide a form of application which was used by the appellant, in which the appellant agreed to be bound by the regulations of the relief department; . . . that this application, on approval by the superintendent of the relief department, shall make him a member of the relief fund, and constitute a contract between him and the company . . . It also appoints the beneficiaries in case of death, and contains the following agreement: 'I also agree that, in consideration of the amounts paid and to be paid by said company for the maintenance of said relief department, and of the guaranty by said company of the payment of said benefits, the acceptance by me of benefits for injury shall operate as a release and satisfaction of all claims against said company and all other companies associated therewith in the administration of their relief department, for damages arising from or growing out of said injury.' "

None of these cases involved a plan or contract similar to the I. A. D. The one very distinguishing feature between them being that in the latter no premiums or dues were paid by the employe; nor was an application ever signed by William Blanks, nor, as before stated, did he comply with the express terms and conditions of the plan.

The case nearest in point that we have been able to find is that of McNevin v. Solvay Process Co., 53 N. Y. Supp. 98. Affirmed in 167 N. Y. 530, 60 N. E. 1115 The fund in this case was credited voluntarily by the company and was a pure gift on its part. The question under consideration in that court was when a sum is credited to an employe on the book furnished by the

company the employe had a vested right in the sum so credited, or whether under the terms by which the fund is established the employe acquires no vested right until the gift is completed by actual payment to the employe, and on this point the court says: ''It must be conceded at the outset that a person or a corporation proposing to give a sum for the benefit of any person or any set of persons has the right to fix the terms of his bounty, and provide under what circumstances the gift shall become vested and absolute. Under the regulations established, it seems to me that none of the employes have a vested interest in any part of this fund, even though credited upon their pass books, until the gift is completed by actual payment. . . . In this case the defendant's trustee decided, after a hearing of the plaintiff, that the plaintiff was not, when the action was begun, entitled to payment of any portion of the fund credited to him, and it seems to me that under the terms of the gift this decision is final, unless, within the discretion of the defendant's trustee, it shall be modified in the future. In case it shall be held that this plaintiff had a vested right in the fund credited to his account, it would necessarily follow that it might be reached by his creditors through proceedings supplementary to execution, and thus the very object of creating the fund would be destroyed. . . .

''The plaintiff subscribed his name to the regulations, and promised to faithfully perform his work with a true loyalty to the interests of the company, and that during his term of service and after leaving the defendant's employment he would not use his knowledge of the company's business or processes to its injury or disadvantage.''

The text of this case is quoted with approval is 26 Cyc. 1049, as follows: ''Where the fund is contributed entirely by the employer, any rules which he makes regulating the disposition thereof are binding on the employe so that he has no rights therein except as provided for by such rules.'' See also Geddis v. Lehigh Coal & Nav. Co., 39 Pa. Sup. Ct. 417.

In our judgment this is the rule that should be applied here. When the company offered its employes the benefits of the I A. D. it was privileged to attach such conditions to the payment of the benefits as it desired,

and there was no contract between the employe and the employer until the requirements of the plan had been complied with. We do not think the appellant has shown himself entitled to any of the relief sought in his pleadings. Decedent having left neither wife nor children, the only other person who could claim the benefits of the I. A. D. is a dependent relative. It is very doubtful if the mother has shown herself within the clause of "dependent relatives," but it will be unnecessary to discuss this phase of the case because of the conclusion we have reached on the other points involved.

Wherefore the judgment of the lower court is affirmed.