**MENKE v. THOMPSON.**

No. 12660.

Circuit Court of Appeals, Eighth Circuit.

Feb. 14, 1944.

Rehearing Denied March 2, 1944.

Malcolm I. Frank, of St. Louis, Mo. (Maurice J. Gordon, of St. Louis, Mo., on the brief), for appellant.

Thomas T. Railey, of St. Louis, Mo., for appellee.

Before SANBORN, WOODROUGH, and RIDDICK, Circuit Judges.

RIDDICK, Circuit Judge.

On July 7, 1932, F. W. Menke, an employee of the Missouri Pacific Railroad Company, retired from its service. At the time of his retirement, the railroad company had in operation a scheme for pensioning superannuated employees. Menke's application for a pension was denied, and this action was instituted to establish his right to a pension, as of the date of his retirement. During the progress of the litigation Menke died. The cause of action was revived in the name of Lena H. Menke, executrix of his estate. From the judgment of the District Court denying the relief sought, plaintiff below has appealed.

On June 11, 1917, the Board of Directors of the Missouri Pacific Railroad Company adopted a resolution approving a plan for pensioning its employees. The plan was incorporated in certain written "Rules and Regulations for the Pension System," which included a provision for their amendment from time to time, and provided for the administration of the plan by a Board of Pensions made up of employees of various departments of the railroad company. The Board of Pensions was given the power to make and enforce rules for the operation of the pension department, to rescind, construe, interpret, amend, or modify them, and to determine the eligibility of employees to receive pension allowances and the conditions under which such allowances should inure, the action of the board in the respects stated to be final and conclusive. The plan provided for the retirement of all officers and employees who had reached the age of 70 years and for the pensioning of those employees who, on the date of retirement, had been 25 years continuously in the service of the company. Continuous service was to be reckoned from the date on which the person retired began continuous employment to the date of his retirement. Under the plan, continuity of an employee's service was not broken by absence from duty due to incapacitating injury or sickness, nor by discharge followed by reinstatement, as distinguished from reemployment, under certain conditions not material here, nor by temporary lay-off on account of the reduction in the number of employees, nor by leave of absence, suspension, or dismissal followed by reinstatement within one year; but, with these exceptions, no person leaving the service of the railroad company prior to retirement was entitled to receive a pension. The rules provided that any person voluntarily leaving the service of the company, though for one day only, thereby broke the continuity of his service and that, on return to service, such person should be a new employee in relation to the pension plan.

The rules and regulations further provided that pensions should be paid monthly and charged to the company's operating expense, without charge to employees. The Board of Pensions was given the power to withhold pensions which had been allowed, in cases of gross misconduct of the pensioner or for other good cause determined by the board. All pensions allowed or provided by the pension plan were declared to be gratuities and to remain the exclusive property of the company until actual payment to the pensioner. The right of assignment by the pensioner was denied, and it was expressly provided that neither the action of the company establishing the pension plan, nor any other. action taken by it or by the Board of Pensions in relation thereto, should be construed to give any officer or employee of the company a right to be retained in the service or any right or claim to any pension allowance. The company retained the right to discharge, at any time, any officer or employee when, in its judgment, such discharge was necessary, in the interests of the company, without liability for any claim for a pension or allowance other than salary or wages then due and unpaid.

Menke entered the service of the railroad company in 1886. His employment was unbroken until July 1922 when a strike occurred in the mechanical department in which Menke was employed. Menke was a member of the union calling the strike. He left the service of the company because of the strike and did not return until October 25, 1922, when he was reemployed, and thereafter remained in the company's service until his retirement in August 1932. On the day before his employment in 1922 Menke signed a written application for employment, in which he stated that he had previously been employed by the railroad company from 1897 (admitted by all parties to be an error) to 1922, and that he had left the service of the company because of a strike. He also signed an endorsement stamped on the application reading as follows: "I, the undersigned, being over the age limit, thoroughly understand, I am not to receive any benefit of the Pension System now in vogue in the Mo.P.R.R. System." The pension rules at that time provided that no person over the age of 45 was eligible for employment, with exceptions not material here. Menke was then approximately 60 years of age.

In his written application for a pension, addressed to the Board of Pensions, Menke stated that he was born July 7, 1862, that he first entered the service of the Missouri Pacific Railroad Company in 1886, and that he was out of service from July 1922 to October 25, 1922. The application for pension was denied by the Board of Pensions on the ground that Menke had left the service of the company for the period stated in his application, the board in its letter of denial pointing out that, by the rules covering the allowance of pensions, no employee was eligible to pension who had voluntarily left the service of the company, even though for only one day.

There is no evidence in the record that Menke questioned the ruling of the Board of Pensions, or that he took any steps to have that ruling changed to conform to what he later claimed to be the facts, until the institution of this proceeding in September 1940, eight years after the action of the board. At that time the Missouri Pacific Railroad Company was undergoing reorganization in the United States District Court under section 77 of the Bankruptcy Act, 11 U.S.C.A. § 205. On September 20, 1940, Menke asked, and was given leave by the District Court to file a claim for a pension in the reorganization proceeding. The claim was referred to a special master "to take the testimony, and to return and report the same to this Court, together with his findings of fact and conclusions of law thereon subject to the full consideration and final determination of this Court."

In his petition for the allowance of his claim, Menke averred that he had been continuously in the employment of the Missouri Pacific Railroad Company for 46 years prior to the date of his retirement, on which date he had reached the age of 70, and that, by the rules and regulations governing the pension plan, he was entitled to the pension claimed. The rules and regulations heretofore summarized were attached and made a part of the petition.

Although alleging that his employment by the railroad company had been continuous since 1886, Menke admitted in his petition that he left the service of the company in July 1922 because of a strike in which he was compelled to join. He alleged that he returned to service in October 1922 at the invitation of his foreman, on the express oral promise that on his

return he would be "restored to full seniority of all his rights and privileges as an employee of said Railroad Company as if he had never gone on strike". He averred that the railroad company and its trustee in reorganization were now attempting to repudiate the agreement made at the time he reentered service and to "defraud claimant of his pension", which, under his contract of reemployment, the railroad company was obligated to pay.

At the hearing before the master, Menke denied that he signed the waiver of pension rights endorsed on his application for reemployment dated in October 1922. His testimony was flatly contradicted by the clerk who witnessed his signature. The foreman who reemployed Menke had no definite recollection of promising Menke a restoration of all his rights as an employee as an inducement to return to work before the settlement of the strike but he thought he recalled receiving a bulletin from the company authorizing the reinstatement of strikers with restoration of seniority rights, provided they returned to the company's service before a certain date. He thought he employed one other striker on those conditions, and possibly Menke, though he had no definite recollection of the matter. He did not recall whether Menke returned to the service before the expiration of the offer. On behalf of the company there was introduced in evidence a bulletin addressed to all striking employees of the railroad, dated September 26, 1922, the effect of which was to discharge all employees then on strike. This bulletin, which was distributed to all foremen and employing agents of the company, expressly provided that "Former employees (strikers) who are satisfactory to the employing officer and who apply in person will be given preference in filling such vacancies as now exist, their seniority to date from the date on which they re-enter the service."

The evidence on behalf of the company also established the fact that the strike was never settled, the company employing others to take the places of the strikers, and negotiating agreements with them covering wages and working hours. It was further shown that, in conformity with agreements between the company and various unions representing its employees, the company posted at the places of employment of various union members a roster of employees showing their rights of seniority. This roster had the approval of representatives of the company and of the employees before being posted. The roster posted for the department in which Menke was employed showed that his seniority dated from October 25, 1922. The roster was posted for employees at the instance of their representatives, and for the specific purpose of informing them so that errors might be corrected. Presumably, Menke was familiar with it. But, in any event, it does not appear that he ever entered any objection to it.

It also developed at the hearing before the master that the correct date of Menke's birth was July 7, 1863, and not July 7, 1862, as stated by him in his application for pension. He was therefore only 69 years of age at the time of his retirement.

On this evidence the special master found that Menke had entered the service of the Missouri Pacific Railroad Company in the year 1886; and that he continued in that service without interruption until July 1, 1922, when he went out on strike, returning to work on October 25, 1922, and continuing in his employment until July 7, 1932, when he was retired on the honest belief of both parties that he had reached the age of 70; that Menke did not go on strike in July 1922 because he was dissatisfied with his work, but because he did not wish to incur the disapproval of his fellow union-members; that he returned to work before the strike was settled upon the assurance of his foreman that by returning then claimant would not lose his seniority rights or his right to a pension. He found that on returning to work Menke signed the written application and the endorsement upon it waiving his rights to pension. On these facts he concluded as a matter of law that Menke had been continuously in the employment of the railroad company from 1886 to the date of his retirement within the meaning of the rules and regulations of the pension plan, on the theory that the relation of master and servant is not terminated by the act of an employee in going out of service on a strike. In the alternative the master concluded that, if Menke's absence on strike could be held to constitute a break in the continuity of his service, the company was nevertheless bound by the agreement between Menke and his foreman for restoration of his rights on consideration of his returning to work. He concluded also as a matter of law that the company's pension plan "con-

stituted a unilateral contract binding upon the company when the employee complied with its conditions," and that the decision of the Board of Pensions was reviewable by the courts under the facts in this case, intimating that it might be reviewed on the ground of fraud on the part of the company in repudiating the alleged contract of re-employment between Menke and his foreman.

On exceptions of the railroad company the master's report was submitted to the District Court, which sustained all exceptions, set aside the master's report, and decided the issue in favor of the railroad company. The District Court found that claimant was born in 1863; that he went to work for the railroad company in 1886; went out on strike July 1, 1922, and returned to work on October 25, 1922; that in ordering his retirement the company relied on statements of the plaintiff regarding his age. The court also found that upon returning to work Menke signed a new application for employment containing a statement to the effect that he waived any claim to a pension; that the company at the time of the strike never issued any statement promising the restoration of seniority rights or the restoration of pension eligibility to any of its striking workers. The court concluded as a matter of law that the pension plan was a unilateral voluntary undertaking by the railroad company; that it was competent for the company to make its bounty subject to whatever conditions it chose and to reserve to itself the power to determine whether such conditions had been met; that the rulings of the Board of Pensions pursuant to the rules and regulations for the pension system were conclusive as to the eligibility of any employee for a pension, in the absence of fraud; that there was no showing of any arbitrary or fraudulent action upon the part of the board.

For the reversal of the decision below appellant makes numerous assignments of error, all of which are argued at length in briefs of both the parties. We have carefully considered all of the questions raised by both parties. Only those material to decision here are discussed in this opinion.

█ The District Court's findings of fact made upon conflicting evidence are not clearly erroneous (Rule 52, Rules of Civil Procedure, 28 U.S.C.A. following section .723c), and therefore are conclusive here. Its conclusions of law based upon facts found are sustained by the great weight of authority.

█ The pension plan of appellee railroad company was entirely voluntary, and its benefits were, as declared in the plan, gratuities. No fund was established by the company and impressed with a trust for the benefit of its employees. The right of any employee to receive the pension provided was not made dependent upon contributions by the employee to the expense of paying the pension or to the expense of administering the pension plan. The whole burden was borne by the company. No statute then in force required of the company the assumption of the burden which it took upon itself in providing for pensions for its employees. It therefore had the right, as the District Court correctly held, to condition its bounty in such manner as it saw fit. Clark v. New England Telephone & Telegraph Co., 229 Mass. 1, 118 N.E. 348, 350; Western Union Telegraph Co. v. Robertson, 146 Ark. 406, 225 S.W. 649, 652; McNevin v. Solvay Process Co., 32 App.Div. 610, 53 N.Y.S. 98, affirmed 167 N.Y. 530, 60 N.E. 1115; Dowling v. Texas & N. O. R. Co., Tex.Civ.App., 80 S.W.2d 456, 458; Spiner v. Western Union Telegraph Company, Tex.Civ.App., 73 S.W. 2d 566; Magnolia Petroleum Co. v. Butler, Tex.Civ.App., 86 S.W.2d 258, 262; Webster v. Southwestern Bell Telephone Co., Tex. Civ.App., 153 S.W.2d 498, 500; McLemore v. Western Union Telegraph Co., 88 Or. 228, 171 P. 390, 1049; Stewart v. Wisconsin Steel Co., 183 Ky. 730, 738, 210 S.W. 479, 482, 483. Compare Schofield v. Zion's Co-operative Mercantile Institution, Utah, 85 Utah 281, 39 P.2d 342, 96 A.L.R. 1083. The liability of the railroad company was fixed by the terms of the rules and regulations governing the pension plan. The company was within its rights in providing that the pensions awarded under the plan were gratuities; in denying any legal right to any pension allowance until actually paid to the pensioner; in conferring upon the board charged with the administration of the plan the exclusive power to interpret rules and regulations for its administration, and to amend or to rescind the rules; in conferring upon the board the conclusive power to decide the eligibility of applicants for pensions and in making its decisions on any of the questions stated conclusive on all parties. By the rules and regulations promulgated by the company and administered by the Board of Pensions,

the company only obligated itself to pension such employees as the Board of Pensions, in the fair exercise of the power conferred upon it, determined to be eligible to receive the benefits of the plan.

 Appellant contends, however, that the pension plan constituted an offer by the company to its employees, which, when accepted and its conditions met, resulted in a contract binding upon the company to pay the pension provided. Even so, Menke must be held to have accepted the offer subject to its express conditions. In order to be entitled to the pension provided in the plan, Menke must not only have complied with each of these conditions, but also the Board of Pensions must have so found. The important question before the board was whether Menke had established his continuous service in the employment of the company for 25 years, and on this question the appellant is bound by the decision of the board, if fairly made. The authorities are uniform in holding in cases of this character that the decision of the administrative board, where the pension plan so provides, is conclusive upon the rights of an employee in the absence of fraud or arbitrary action. See cases cited supra. The stipulations in pension plans for the decision of questions arising on the rights of employees to receive pensions are not unlike those often found in construction contracts, making an engineer or architect the final arbiter of disputes arising between the parties. Such stipulations are universally upheld. Road Improvement Dist. No. 5 of Crittenden County, Ark., v. Roach et al., 8 Cir., 18 F.2d 755, 759; Clark v. New England Telephone & Telegraph Company, supra; McCullough v. Clinch-Mitchell Construction Co., 8 Cir., 71 F.2d 17, 20, 21; McGregor v. J. A. Ware Construction Co., 188 Mo. 611, 87 S.W. 981, 984. The decision of the Board of Pensions denying Menke's claim for a pension is therefore conclusive, to use the words of this court in Guild v. Andrews, 8 Cir., 137 F. 369, 371, "in the absence of fraud or such gross mistakes as imply bad faith or a failure to exercise an honest judgment." The burden of showing such fraud, bad faith, or mistake was upon the appellant here, and, to sustain such a showing, the evidence "must be more than a mere preponderance, it must be overwhelming." Road Improvement Dist. No. 5 of Crittenden County, Ark., v. Roach, supra, 18 F.2d at page 760. We agree with the finding of the trial court that the evidence here wholly fails to establish any fraud on the part of the board. It does not appear that the board was advised at any time prior to its action on Menke's claim that he had reentered the service of the railroad during the strike upon the promise of the employing agent to restore his pension rights. The matter was heard by the board upon such evidence as Menke saw fit to submit to it, and in the evidence, without explanation or denial, appeared Menke's waiver of his right to a pension, signed at the time of the reemployment, and his statement that he had left the service of the company from July 1922 to October 25, 1922. Moreover, the District Court found upon conflicting evidence that the alleged agreement concerning restoration of Menke's rights to a pension was never made.

 Nor is there any merit in appellant's argument that the decision of the board was arbitrarily made, because the pension plan did not provide that leaving work because of a strike should constitute a break in the continuity of Menke's employment. We can not agree with appellant's interpretation of the terms of the pension plan. By those terms it was provided that discharge followed by reinstatement, as distinguished from reemployment, absence from duty due to sickness or injury, and temporary lay-off on account of a reduction in the number of employees, should not, under certain conditions, amount to a break in the continuity of employment. With these exceptions, any voluntary absence from employment, even though for one day only, was made a break in continuity of service. Conceding that there was a contract between the parties arising out of the company's offer of a pension and Menke's acceptance of it, the fair interpretation of the contract affords no ground for holding that absence on strike did not constitute a breach of it. The contract here possessed none of the elements of a contract of insurance and is not to be interpreted strictly against the railroad company, especially since the burden it assumed was entirely voluntary and gratuitous. McLemore v. Western Union Telegraph Co., supra. But, in any event, by the terms of the contract, its interpretation was committed to the Board of Pensions, and interpretation of the board fairly made was declared to be conclusive upon the parties. Unlike many pension plans,

the present plan made the decision of the Board of Pensions conclusive both on questions of law and questions of fact. Such provisions have been sustained by the courts. McNevin v. Solvay Process Co.; Dowling v. Texas & N. O. R. Co.; McLemore v. Western Union Telegraph Co., supra.

It is true that in many cases relied on by appellant courts have held that a strike does not necessarily terminate the relation between employer and employee, and that under recent legislation employees on strike are, for the purposes of the legislation in question, declared to remain employees. But, at the time of the strike in question here, there was no statute, applicable to the situation involved in this case, maintaining the relation between employer and employees on strike. At the time involved here either party had the undoubted right to terminate the relation either because of strike or for any other reason. The pension plan provided that the company might discharge any employee when, in its judgment, the best interests of the company required his discharge. In the present case the evidence shows that one month before the reemployment of Menke the railroad company discharged all of its striking employees.

The judgment of the District Court is affirmed.

WOODROUGH, Circuit Judge, concurs in the result.