Common Pleas Court of Franklin County.

MILTON N. BOLING V. NORFOLK & WESTERN RY. CO.

Decided November 1, 1932.

*Malcolm Y. Yost* and *Harold Adams*, for plaintiff.

*James I. Boulger, Louis Bannon* and *Harry Weaver,* for defendant.

KING, J.

After having listened carefully to the evidence and argument of counsel, I am ready to pass upon the motion to direct a verdict for the defendant.

Plaintiff while employed by defendant entered into a contract whereby he became a member of the relief fund maintained by the defendant and its employees. This fund, which is purely voluntary, was open to employees of the defendant, no employee being required to become a member, and a member being permitted to withdraw from the fund. This relief department and fund, while in the nature of a mutual benefit society is not classified as insurance business. (*State ex rel* v. *Railway,* 68 O. St. 9.) It is under the general supervision of an advisory committee consisting of the President of the railway company, five members appointed by the Board of Directors of the railway, and five members elected by the employees. It was established to furnish benefits to the contributing employees who, under the regulations are entitled thereto when disabled by sickness or accident and in the event of their death to their designated beneficiaries. The fund from which their benefits are to be paid is derived from voluntary contributions of employees, interest on funds, profits from investments, gifts or legacies and advances made by the railway when necessary to make up any deficit. The railway guarantees the fulfillment of obligations assumed by the relief division, supplies the facilities for conducting the business and pays the operating expenses. The fund is held by the treasurer of the railway in trust for relief purposes, but investments are to be approved by the advisory committee. It will be noted that this fund differs from ordinary

mutual beneficial companies in that the expenses are paid by the railway which guarantees the solvency of the fund and that the employees are directly represented on the governing board.

There are different classes of membership based upon the wages of the contributing employee. The amount of payments for disability is prescribed by the rules, and if the injury is of a permanent nature these benefits "cease when he shall be declared by the medical director able to earn a livelihood in an employment suited to his capacity." Rule 52 prescribes that benefits on account of continued disability will be paid monthly; and Rule 55 provides:

"In order that disabled member may have the full benefit of being promptly and frequently seen by the medical examiners, it shall be their duty, when their condition and location do not prevent, to call upon the medical examiners as soon as practicable after disability begins, and at such times thereafter as the medical examiners may deem necessary.

"Disabled members shall not be entitled to benefits if they shall decline to permit the medical examiners to ascertain their condition, or shall fail to give proper information respecting it, or shall prevent the necessary examination by absenting themselves from home without arranging with the medical examiners or giving satisfactory reasons for not so doing, or shall fail to comply with notice to meet the medical examiners at their offices or elsewhere, when their condition and location will permit their doing so."

Rule 37 is as follows:

"The following benefits will be paid to members or their beneficiaries as provided in these regulations, but no claim for benefits thereunder shall be payable or paid until or unless satisfactory and positive proof of a disability or continued disability be furnished to and filed with the medical examiner in such form or manner as he may require of the member, and be certified by the medical examiner. Unless such proof of the validity of such claim be presented within one year from date of the death, injury or sickness on which claim is based, it shall not be accepted nor claim paid.

"In any case of disability classed as either accident or sickness, benefits will cease when the member shall be declared by the medical examiner able to return to his regular duty, or able to earn a livelihood in an employment suited

to his capacity; or unless or until under regulations adopted by the company he is retired on pension."

Rule 62 reads thus:

"All questions or controversies of whatsoever character arising in any manner, or between any parties or persons in connection with the relief division, or the operation thereof, whether as to the construction of language or meaning of the regulations, or as to any writing, instruction or acts in connection therewith, shall be promptly submitted to the determination of the superintendent; but if a decision in any case is given a member by a medical examiner or the medical director, an appeal therefrom shall be submitted within sixty days of the time of such decision to the determination of the superintendent of the relief and pension department, whose decision, however, shall be subject to the right of appeal to the advisory committee within thirty days after notice of his decision to the parties interested.

"When an appeal is taken to the advisory committee, it shall be heard by said committee without further notice at the next stated meeting, or at such future meeting or time as they may designate, upon evidence and argument submitted in writing, and shall be determined by a majority vote of the members present at the meeting, and the decision arrived at thereon by the advisory committee shall be final and conclusive upon all parties without exception or appeal."

Prior to June 3, 1927, plaintiff applied for, and was admitted to, membership in the fund stipulating in his application:

"I also agree, for myself, and those claiming through me, to be especially bound by regulation No. 62, providing for final and conclusive settlement of all disputes by reference to the superintendent of the relief and pension department and an appeal from his decision to the advisory committee."

On June 3, 1927, he was hurt while in the course of his employment and claims permanent disability. He was paid benefits out of the fund to June 1, 1928. Plaintiff says that on June 22, 1928, Dr. Kramer, a medical examiner for the fund called on him and demanded that plaintiff report at the doctor's office for examination, and when plaintiff remonstrated that he was unable to do so,

the doctor threatened him and said Boling's relief would be stopped if he did not call. He did call and the monthly payment for June was not paid nor has any further disability benefit been paid, although as far as the evidence goes Boling claims to be still disabled.

Plaintiff explains that his physical condition was bad at the time Kramer called and at least until July 10th thereafter, although he admits that he had been visiting another physician about once a week, had been out of the house, and in December, 1928, had appeared in the trial of a case filed early in 1928, in which he was plaintiff and preparatory thereto had conferred with his attorneys. On January 18, 1929, he wrote to Mr. Snavely, superintendent of the relief fund, asking why his benefits were discontinued, and a few days later received a reply saying:

"When you chose not to comply with Dr. Kramer's requests and with our regulations, your case was properly closed out thereunder and there is nothing further due you. When our employees, members of the relief fund will not co-operate with us and comply with their contract of membership and our regulations then all benefits must cease  *  *  *."

In April, 1929, accompanied by an attorney he called on Dr. Kramer, the medical examiner, who refused physically to examine him on the ground that his membership had terminated. Subsequently, through another lawyer, the plaintiff renewed correspondence with the superintendent of the fund, who reiterated the position he had taken in his letter denying continuance of benefits, and in December, 1930, the present counsel for Mr. Boling wrote Mr. Snavely whose reply gave a history of the matter. The final result was that on December 30, 1930, Boling attempted to appeal to the advisory committee, and the superintendent rejected this because filed too late.

The plaintiff agreed to be bound by the provisions of the contract embodied in his application. The relief association is humanitarian in its nature, binding the parties by the conditions upon which employer and employee enter into it.

The plaintiff claims that he was entitled to relief. The relief was paid him for a certain time and then after-

wards denied him. He now seeks to have the jury determine whether under the contract he is entitled to pay at $1.25 per day, or approximately $1,342., which he claims is due and owing him by virtue of this contract which he claims has been violated on the part of the relief association. The defendant denies that there is any sum owing to the plaintiff; and contends that the plaintiff has failed to comply with the terms and conditions of this contract and rules on his part to be performed. Plaintiff denies this. Thus the issue is made. This contract and the rules and regulations of course are the chart and compass. The rules and regulations, 55 and 62, provide that the plaintiff must do certain things. He must co-operate with the Association; he must submit himself to a physical examination at the request of the physician representing the association, whose duty it was to look after this particular case. There is some controversy about whether he was able to comply with the examiner's request, and on that phase of the case the court would not be warranted in taking it from the jury if this were the question in issue. But the regulations, to which the plaintiff subscribed and by which he specifically agreed to be bound when this relationship was entered into, provided that he would appeal to the superintendent within sixty days after the refusal on the part of the examiner further to continue his benefits; and if the superintendent decided that he was not entitled to further compensation, that within thirty days he should have the right to appeal from such a decision. This is the procedure that is adopted by the Association to have determined the complaint made by one who seeks relief. The evidence is uncontroverted that in January, 1929, Mr. Snavely, the superintendent, informed him that he was not entitled to any further benefits. This was in response to a request by the plaintiff, after no benefits had been paid him after the lapse of considerable time after the visit of Dr. Kramer, when acting apparently under Rule 55, he said to plaintiff in substance: "You must report to us in June or else you will be taken from the relief." The superintendent properly informed the plaintiff of the fact that he had been denied further relief by

the examiner. At that time the plaintiff was duly advised and informed of the action of the superintendent. Rule 62 provides that the decision of the superintendent shall be subject to the right of appeal. It does not mean to say that he must appeal. He may decide that the examiner or superintendent was right, or he may exercise the right of appeal from the action of either. As a further safeguard to plaintiff, final recourse is to an advisory board made up of an equal number of the representative men of the craft and also from the railroad, both being thus given a proper and fair representation upon the board of appeals, which we must assume constitutes an impartial tribunal. This regulation is a mandatory provision for the benefit of the claimant in the sense that compliance with it is a condition precedent to relief in court; plaintiff must exhaust the remedies provided by the association of which he is a part and comply with the contract by which he has agreed, specially and specifically, to be bound. He failed to do that; failed not only to perfect his appeal within thirty days, but months elapsed, conferences were had, negotiations undertaken and his attorneys intervened. Plaintiff cannot say that he was unaware of the facts or not apprised of the conditions of the contract, the rules, and of his failure to comply with this contract and these rules. Whether he was aware of them or not, he is bound by the provisions to which he subscribed and to which he unequivocally agreed, in fact he makes no claim of ignorance or duress. These remedies are not merely optional; I take it he must resort to them as any layman must resort to the remedies which are provided by the Association of which he is a member, if he is dissatisfied with decisions of inferior officials. There is a very good reason for this. If members were not bound by such regulations, they could delay indefinitely. After the lapse of years witnesses would have died and evidence been destroyed; the association would be placed in a great handicap. The same logic and the same philosophy obtains in the appeal as provided in this provision 62 as in the right of appeal or the right to prosecute error in our courts. Having failed to comply with the terms and conditions upon his

part necessary to be performed, he has deprived himself of any further redress or recourse.

While it is unnecessary here to decide the question, it seems to me as a matter of *obiter,* that upon the facts of this case, the final decision within the order should be conclusive and resort to court precluded. In saying this I have not overlooked *Railway* v. *Stankard,* 56 Ohio State, 224, which holds that a provision in relief department rules precluding resort to court is void. That case, however, as I understand it, recognizes that parties may contract that certain *facts* may be conclusively determined by a person named in the contract and this fact when thus ascertained is conclusive in the absence of fraud, gross abuse of discretion or manifest mistake, none of which are charged or proved here; and when these facts are found, *questions of law* may still be litigated, as, for instance, the construction of the contract or meaning of rules which is a question of law for the court. This seems to be the interpretation placed upon the Stankard case in *Myers* v. *Jenkins,* 63 Ohio State, 101, holding that where a member of a lodge seeks benefits, the determination of the matter by the lodge tribunals in accordance with the regulations will be final, saying:

"The case of *B. & O. R. R. Co.* v. *Stankard,* 56 Ohio State, 224 * * * shows that *after settlement of preliminary matters* and *the fixing of the amoont due,* the courts cannot be robbed of their jurisdiction to compel payment." p. 119.

The Stankard case is then distinguished on the ground that in that case *"the construction of language,* the *meaning* of regulations or of any writing, decision, instructions or acts was to be conclusively determined." This view is also recognized in *State ex rel* v. *Creamer,* 85 Ohio State 349, holding that the Stankard case shows "parties may contract to submit the fixing of facts to some non-judicial tribunal." As reflecting upon this, see also, *State ex rel* v. *Industrial Commission,* 124 Ohio State, 589, holding that the Industrial Commission is a fact finding body whose judgment is final unless there is provision for review of its finding, "the function of determining the extent of disability" being left to the commission.

Note *Lyons* v. *Industrial Commission*, 42 Ohio App. 132.

The question of whether disability ceased was purely a question of fact; the rules unequivocally required Boling to report to the medical examiner as otherwise the question could not be determined, it being this, no doubt, that compelled the examiner to demand that plaintiff go to his office; if he visited another physician and participated in the trial of his cause he could have visited Dr. Kramer before he did in April, 1929. There was no question of law decided by Dr. Kramer, but simply the finding of a fact, in that plaintiff could but would not call at the examiner's office for examination for the purpose of enabling the examiner to determine whether benefits were to be continued, and that this being the fact payments must cease.

For these reasons I am inclined to the view that on questions of fact, in the absence of fraud, collusion, manifest mistake or abuse of discretion, the determination of the tribunals of the order should be final, and recognize as sound the views of the Supreme Court of Kentucky in *Pennsylvania Co.* v. *Reager*, 152 Ky. 824, wherein after certain payments the benefits were discontinued and suit was brought, the regulations being similar to those here in question. The court took the position that right to continued relief upon incapacity to earn a livelihood suited to the members capacity, which was *a simple question of fact* incident to continuance of benefits, and the decision within the order was final. In a later case the Supreme Court of Kentucky conclude that the Stankard case as interpreted in the Myers case establishes that the Ohio Rule is the same as in Kentucky. *Carmody* v. *Pennsylvania Co.*, 266 S. W. 1082.

Taking into consideration the voluntary nature of the fund, the character of the work that is done by it, the fact that the railroad pays operating expenses and makes up deficits, that the employees have equal voice with the railroad in supervision, the beneficient effect to employees, the obvious fact that its success depends upon fair and impartial treatment by the committee of the members; the modern tendency to eliminate court procedure, as is illustrated by workmen's compensation laws, and to pro-

mote settlement of controversies, it seems to me that the purpose of the fund to dispense with the economic waste and delay incident to litigation, by providing tribunals within the organization to pass on questions of fact, should be subserved by precluding resort to court in instances such as we have here.

It is unnecessary, however, here to decide this point, as the answer avers, the reply admits and counsel concede in argument that the relief department and its superintendent have so interpreted Rule 62 as not to prohibit resort to court after remedies within the department have been exhausted. It is contended by the defendant that the undisputed evidence clearly shows that plaintiff did not exhaust his remedies within the department with the result that he may not maintain this suit.

The evidence develops that no claim for benefits shall be payable, unless satisfactory and positive proof of continued disability be furnished the medical examiner, who is charged with the duty of reporting upon the character of disability, in such manner as he may require of the member, and the benefits cease when the member is declared by the medical director able to earn a livelihood in an employment suited to his capacity. Under Rule 55 it is the duty of the member to call on the examiner when his condition does not prevent, and he is not entitled to benefits if he declines to permit the examiner to ascertain his condition, or if he fails to comply with notice to meet the examiner at his office or elsewhere when his condition and location will permit.

Boling admits that the examiner in June, 1928, ordered him to report at the examiner's office and notified him that benefits would be discontinued in June unless he did so, but says that he told the examiner that he was unable to do this. Of course if he could not report, it was unnecessary for him to do so and the truth of what he said would have been an issue of fact for the jury if that were the point in issue here, but, as I view it, that is not the ultimate question. It may be assumed that the examiner was wrong in this, yet this does not permit resort to court, because no matter what view may be taken of

the effect of the provision for conclusive determination by tribunals of the organization, it is a condition precedent to court action that the member shall first pursue the remedies provided in the rules for the purpose of reviewing, within the organization, an erroneous determination of the examiner. This view is suggested in *Railroad* v. *Stankard, supra,* wherein the court say:

"If the superintendent had rejected the claim and had so notified the parents, and they had failed to take an appeal to the advisory committee, it may well be doubted whether they could have sustained an action in court upon the claim, because in such beneficial associations it is held that the claimants must pursue to the full extent, the remedy, provided by the rules and regulations before resorting to actions at law. This is for the benefit of both parties, and is reasonable."

Again in *Myers* v. *Jenkins, supra,* it is held that the member must first seek his remedy in the tribunals of the order in substantial accordance with its laws, and if he fails to secure a hearing on appeal, by reason of negligence of himself or officers of the order, he is not entitled to sue in the civil courts, the court saying:

"As well might a party who has been defeated in a court of justice and appealed to a higher court, and failed for any cause to perfect his appeal, claim that by reason of such failure he has the right to begin a new action and recover his demand." *Supreme Court of Foresters* v. *Herlinger,* 6 C. C. (N. S.) 28; *Catholic Union* v. *Herron,* 4 O. L. R. 686.

This question has been thoroughly discussed in *Hanson* v. *Chicago Etc. R. Co.,* 232 Pac. 1109, where a verdict was held properly directed for the company, on the ground that relief department rules giving a remedy in the organization require that those remedies must be exhausted before invoking court procedure. *Relief Ass'n* v. *Post,* 122 Pa. 579.

It is urged, however, that plaintiff was not notified in writing by the examiner that benefits would be discontinued. He testified, however, that he was told this, and he knew that he no longer received them, the June payment which would be due in July not having been paid

nor any other after that time. His right to benefit was not merely based upon disability, but rather inability to earn a livelihood in an employment suited to his capacity, —a question of fact to be determined only by careful examination. He knew the rules prescribed that proof of continued disability must be furnished the examiner or his claim would not be paid, and that it was his duty to call on the examiner, if his condition permitted, and that the examiner demanded that he so call, evidently because the examiner thought he could do so; if the examiner was wrong about his ability to call, plaintiff knew of the erroneous view of the examiner and should have complied with Rule 62, which apparently requires no written notice, but authorizes the appeal to the superintendent from any instruction of act—in fact, upon all questions of controversies, and we have here an act and a controversy. This appeal must be perfected within 60 days. It is argued that plaintiff was unable to appeal, but if he were able to go out, be in the hotel lobby, visit his physician, it is difficult to understand why he could not have written the superintendent. If, however, the beginning of the 60 day period were to be extended because of illness, this could not have been to a period within 60 days prior to January 18, 1929, when he wrote to the superintendent, who replied promptly telling him that when he failed to comply with the regulations his case was properly closed out and there was nothing due him. In fact, Boling says he was out on July 10, 1928.

If it be conceded that plaintiff was within time in taking up the matter with the superintendent, there is no doubt about his receiving notice from the superintendent in January, 1929, that the decision of the examiner was correct; after that, without any excuse whatever, he failed to appeal within 30 days to the advisory committee as required by the rules. In April, 1929, he visited the examiner, later conferred with attorneys about his claim, and it was not until December, 1930, that he attempted to appeal. This, I find, demonstrates that he, without excuse, neglected to prosecute the remedies given him by the rules and his contract of membership.

It is insisted, however, that the matter of appeal is

purely optional and, therefore, he does not lose his right to judicial relief because he did not elect to appeal. I do not agree with this. If plaintiff was not bound to comply with the rules, he could indefinitely delay, until evidence was destroyed, and the same logic governs as controls in error or appeal proceedings in court. Such a regulation is mandatory if the member wishes to review the finding against him, and the procedure prescribed must be followed: *Hanson* v. *Railroad, supra; Robinson* v. *Templar Lodge,* 117 Cal. 370; *Supreme Court* v. *Forsinger,* 125 Ind. 52, relied upon in the Stankard case *supra.*

In *King* v. *Wynema Council,* 78 Atl. 845, a provision that one aggrieved *"may"* appeal was held mandatory not permissive, the court saying that it is not possible to make a dissatisfied member appeal, at most he can only be given that right and if he fails to exercise it he cannot sue; the provision making the decision final necessarily makes the appeal obligatory, if the dissatisfied member proposes to contest the decision. This is a *fortiori* true under the contractual stipulation whereby plaintiff agreed to be specifically bound by the provision for "final and conclusive settlement of disputes by reference to the superintendent * * * and an appeal from his decision to the advisory committee," which rather clearly implies that the rule is interpreted as mandatory by the parties. When one agrees conclusively to settle by reference in a particular way, that method is exclusive, and, if he fails to exercise it, it may be assumed that he is content with things as they are.

This rule has a function—a purpose to subserve—and a very good one in the orderly and in the proper administration of the affairs of this Association, having in mind its paramount object and purpose of affording proper relief to its membership. Any other construction would permit discrimination and after a time these discriminations would be of such a character as to destroy the association. To prevent this, is the purpose of these rules and there must be a compliance with them, as failure to enforce them would defeat the very object of the organization—would destroy it. While the grant of the right of appeal does not require its exercise, and in that abstract

sense, it may be optional, it is nevertheless a prerequisite to securing a reconsideration of a finding and the time and manner of perfecting it must be that fixed by the rules; otherwise the ruling against the member must stand. In other words, he must exercise his option to appeal if he is not to be bound by the finding against him, which gives mandatory effect to the rule authorizing review of decisions.

Therefore, the motion to direct a verdict will be sustained on the ground that the plaintiff neglected to exhaust the remedies given him by the rules of the fund. Exceptions for the plaintiff are noted.

It is argued upon the motion for a new trial that plaintiff is entitled to judgment for benefits from May 31, 1928, until he received from the superintendent the letter of January 21, 1929. The case was not tried or prosecuted on that theory, but waiving this, I cannot concur in that view. The examiner stopped payments as of the date first stated. The plaintiff was advised that this would be done and, of course, knew when he failed to receive subsequent benefits that it had been done. The superintendent had nothing further to do with the matter until he received plaintiff's letter to which his reply was that on account of failure to comply with the examiner's requests, plaintiff's case was properly closed out thereunder and that there was nothing further due him. This left the matter as it was left by Dr. Kramer, viz, plaintiff was entitled to no further benefits; and whether the determination was correct or erroneous it cannot here be reviewed because plaintiff failed to take the required steps to have it reversed in the tribunals to which he agreed to submit the controversy, its effect thus becoming as binding as a judgment in court, which, in spite of error or irregularity, is final, unless appeal or error is prosecuted in the manner and time prescribed by statute. Payment had been stopped and the appeal to the superintendent was to have the discontinued benefits restored, this the superintendent refused to do; hence the action of the examiner must stand, and standing there can be no recovery of any sum whatsoever.