## The Pennsylvania Company, Trustee, et al. v. Reager's Administrator.

(Decided March 18, 1913.)

Appeal from Jefferson Circuit Court
(Common Please, First Division).

Relief Associations—Voluntary—Regulation or By-law Making Decision of Advisory Committee Final—Validity of.—The by-law or regulation of a voluntary relief association organized by certain railroads for the benefit of their employees, giving to its advisory committee, which is composed of six members selected by the railroads and six members selected by the contributing employees, the right to pass on the continued disability of an employee, and making its decision final, is valid, and its decision on such a question is conclusive in the absence of a showing of fraud or mistake.

CHARLES H. GIBSON for appellants.

BENNETT H. YOUNG, HENRY G. BEDINGER for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

In April, 1899, the various railroad companies comprising the Pennsylvania Lines west of Pittsburg entered into an agreement which led to the formation of what is known as The Voluntary Relief Department of the Pennsylvania Lines West of Pittsburg. The purpose of the department was to provide accident and sick benefits for the employes of the railroad companies, whether injured through negligence or not. Membership in the department is optional with the employes. The department is under the management of a superintendent, subject, however, to the final control of the Advisory Committee. The Advisory Committee is composed of six members selected by the employes from among themselves, and six mem-

bers selected by the company. The fund out of which the benefits are paid is derived from monthly contributions from the wages of the members of the Relief Department. In the event there is not suffiicent money in the treasury of the Relief Department to pay the benefits as they accrue, the deficit is made up by the railroad company. The Pennsylvania Railroad Company is the trustee for the Relief Department, and as such receives and disburses all moneys. Members are classified according to the monthly wages received.

On October 6, 1890, J. H. Reager, a car inspector for the Pittsburg, Cincinnati, Chicago & St. Louis Railway Company, one of the. Pensylvania Lines west of Pittsburg, became a member of the third class of the Voluntary Relief Department. Members of this class are made up of employees receiving wages not less than $60 nor more than $80 a month. Members of this class contribute $2.25 a month, and in the event they are disabled, on account of accident while in the performance of duties in the service of the company, they are paid benefits at the rate of $1.50 a day during the first 52 weeks of disability, and at the rate of 75 cents a day so long as the disability continues. In case a member or his legal representative brings suit against any of the companies associated in the Relief Department, for damages on account of injury or death of such member, payment of benefits from the Relief Fund on account of same shall not be made until such suit is discontinued. If prosecuted to judgment or compromised, any payment of the judgment or amount in compromise shall preclude any claim upon the Relief Fund for such injury or death.

From the time J. H. Reager was admitted to membership in the Relief Department up to May 17, 1893, he contributed $2.25 a month to the Relief Fund, and was always a member in good standing. On May 17, 1893, Reager was caught between the ends of two cars, and his knee was injured and his hip dislocated. Thereupon, the Relief Department paid to Reager the sum of $1.50 per day for the first 52 weeks he was disabled, and then at the rate of 75 cents a day for over ten years. The total amount so paid was something over $3,000.

On July 31, 1904, payment of benefits was stopped. Thereupon, Reager brought this action against the Pennsylvania Company as trustee, the Pittsburg, Cincinnati, Chicago & St. Louis Railway Company, and the Volun-

tary Relief Department, for the Pennsylvania Lines west of Pittsburg, to recover benefits from the date they were stopped up to the filing of the suit. Several years later, Reager died, and the action was revived and thereafter prosecuted in the name of Edith I. Reager, administratrix. On January 8, 1912, a trial was had, and the jury returned a verdict for plaintiff in the sum of $1,908, which amount represented the benefits at the rate of 75 cents a day from July 31, 1904, to July 20, 1911, when Reager died. From the judgment entered thereon, this appeal is proscuted.

The chief complaint of the defendants grows out of the alleged error of the trial court in sustaining a demurrer to the second paragraph of the answer which they filed.

It appears that upon becoming a member, each applicant agrees in writing to the regulations of the department, containing the following clauses:

"I also agree for myself and those claiming through me, to be especially bound by regulation number 65, providing for final and conclusive settlements of all disputes by reference to the superintendent of the Relief Department, and an appeal to the Advisory Committee."

Regulation Number 65 is as follows:

"All questions or controversies of whatsoever character arising in any manner, or between any persons in connection with the Relief Department, or the operation thereof shall be submitted to the determination of the superintendent of the Relief Department, whose decision shall be final and conclusive thereof, subject to the right of appeal to the Advisory Committee within thirty days after notice, to the parties interested, of the decision.

"When an appeal is taken to the Advisory Committee it shall be heard by said committee without further notice at its next stated meeting, or at such future time as they may designate, and shall be determined by a vote of the majority of a quorum, or more, present at such meeting, and the decision so arrived at by the Advisory Committee shall be final and conclusive upon all parties without exception or appeal."

Regulation Number 45 is as follows:

"Payments on account of disablement by accident will only be made upon the disablement being shown to have resulted solely from accidents occurring to members in the performance of duty in the service and to which

they were assigned, or which they were directed to perform by proper authority, or in voluntarily protecting the property of the company in whose employ they are. This shall include accidents occurring to members at points upon the employing company's property which they necessarily pass, when going to or from work, and which do not result from their voluntarily or unnecessarily exposing themselves to danger. There must be exterior or other positive evidence of injury, and satisfactory evidence that it incapacitates the person for performing his duty in the service, or, when of a permanent character, to earn a livelihood in an employment suited to his capacity. Disablement from accident occurring otherwise than as aforesaid, will be classed with sickness.

"Questions as to the permanent character of disability and the continued payment of benefits on account of the same, shall be determined by the Advisory Committee."

Setting out the foregoing regulations, the second paragraph of the answer alleges in substance that prior to August 24, 1904, a dispute arose between Reager and the Relief Department, as to whether Reager's disability continued, or whether he was able to earn a livelihood in an employment suited to his capacity, and whether or not he was entitled to receive any further benefits from the Relief Department by reason of his membership therein, and the injury he had received, and that the superintendent of the Relief Department, after investigation, decided that Reager's disablement did not incapacitate him from earning his livelihood in an employment suited to his capacity, and that on the 24th day of August, 1904, he advised Reager, by letter, which the latter duly received, of such decision, and that the Relief Department had no authority to continue paying benefits to him beyond July 31, 1905; that upon being advised of the decision of said superintendent, Reager, on September 4, 1904, sent a written appeal to the Advisory Committee, complaining of said decision and requesting the Advisory Committee to conisder and review said decision and set it aside; that said appeal was duly considered and reviewed by the Advisory Committee, and by a vote of the majority of the committee the decision of the superintendent above set out was approved and sustained; that on October 29, 1904, Reager was duly advised of the action of the Advisory Committee on his appeal from the

decision of the superintendent. It was further alleged that Reager's claim was considered and settled in the manner provided in the contract between the parties, and that defendant relied upon and pleaded said settlement in bar of the action.

The question presented is: Are regulations Nos. 45 and 65 valid, and is the action of the Advisory Committee taken pursuant thereto conclusive of plaintiff's right to maintain this action,

It may be conceded that a large number of the courts, particularly in cases of mutual benefit or fraternal insurance societies, have held by-laws or regulations giving to a certain board or committee of the society the right finally to determine all questions or disputes between the members and the society to be invalid. Various reasons are assigned for so holding. Some of the courts base their conclusion on the fact that such by-laws and regulations deprive the courts of their jurisdiction in matters involving property rights, and are therefore contrary to public policy and void. Others place stress on the fact that such provisions are agreements to refer future disputes to arbitration, and therefore cannot be enforced in equity or sustained in bar to an action at law or a suit in equity. Others take into consideration the fact that such boards or committees are appointed by the society itself, and that an agreement to submit disputes to arbitration before a board or committee selected by the society, and therefore a partial and interested tribunal, should not be enforced. The majority of such courts, however, take the position that such organizations may provide methods for redressing grievances and deciding controversies, and may compel members to resort to this method of procedure before invoking the power of the court. A few of the cases taking this view of the question are Bauer v. Sampson Lodge, Knights of Pythias, 102 Ind., 262; Supreme Council of the Order of Chosen Friends v. Forsinger, 125 Ind., 52, 9 L. R. A., 501; Pepin v. Siciete St. Jean Baptiste, 23 R. I., 81; Conductors' Benefit Association v. Tucker, 157 Ill., 194; Brotherhood of Railway Trainmen v. Greaser, 108 Ill., App., 598; Supreme Lodge v. Raymond, 57 Kas., 648; Myers v. Jenkins, 63 Ohio St., 101, 81 Am. St. Rep., 613. In addition to the foregoing cases, the case of B. & O. R. R. Co. v. Stankard, et al., 56 Ohio St., 224, 46 N. E., 577, 60 Am. St. Rep., 745, 49 L. R. A., 381, is one bearing directly on the valid-

ity of rule 11, of the Relief Department of the Baltimore & Ohio Railway Co. That rule is similar to the rule under consideration. Relying upon the doctrine announced in cases of mutual benefit or fraternal insurance societies, it was held that Rule 11, making the decision of the Advisory Committee final, was invalid. For the purpose of showing the reasoning of the court, we make the following quotation:

"Courts are created by virtue of the constitution, and inhere in our body politic as a necessary part of our system of government, and it is not competent for any one, by contract or otherwise, to deprive himself of their protection. The right to appeal to the courts for the redress of wrongs, is one of those rights, which is in its nature under our constitution inalienable, and cannot be thrown off, or bargained away.

"There is a class of contracts which provide that the value of certain property, the amount of loss sustained, the quantity, quality, character and value of work performed on improvements, and the acceptance of a building by an architect, and other like matters, shall be determined by a certain person named in the contract, and his determination shall be final. Such contracts are lawful, and are usually upheld. They do not oust the courts of their jurisdiction over the subject matter, but only provide a safe and speedy manner of fixing definitely some fact which is usually of a complex and difficult nature, and one that it would not be easy to establish by evidence. Such fact when ascertained and fixed by the person, and in the manner provided by the terms of the contract, is conclusive between the parties, in the absence of fraud, or manifest mistake; but the parties are at liberty, after so fixing such fact to go into court and litigate such differences as may still exist between them. In such contracts, the person selected to determine the particular fact, becomes the agent of both parties for that purpose, and what is done by such agent is, in legal effect, done by the parties themselves, and therefore there is no hardship in holding them conclusively bound thereby, in the absence of fraud or mistake. The following cases are examples of such contracts:

"Easton v. Canal Company, 13 Ohio, 81; Railroad Company v. Veeder, 17 Ohio, 385; Mundy v. Railroad Company, 67 Fed. Rep., 633; Kane v. Stone Company, 39 Ohio St., 1; Railroad Company v. McGrann, 33 Pa. St.,

530; 75 Am. Dec., 624; Faunce v. Burke, 16 Pa. St., 469; 55 Am. Dec., 519; Navigation Company v. Fenlon, 4 Watts & Sergeant, 205; Hamilton v. Insurance Co., 136 U. S., 242. See also 33 Central Law Journal, 138.

"The following cases also throw some light upon the question involved in this case: Guaranty Co. v. Railroad Co., 139 U. S., 137; Gittings v. Baker, 2 Ohio St., 21; Connor v. Drake, 1 Ohio St., 166; Kill v. Hollister, 1 Wilson, 129.

"Such contracts are in their nature only applicable to cases wherein it becomes necessary to fix some facts, leaving the question of law to be settled by the courts upon proper proceedings. The ultimate question to be determined—the liability or nonliability of the parties—must be left to the courts. The construction of a written contract is a question of law for the court, and a provision in the contract that the construction of such contract, or the meaning of rules or regulations, shall be finally determined by some designated person, is void, because the court cannot be robbed of its jurisdiction to finally determine such questions. In insurance and other like cases, where the ultimate question is the payment of a certain sum of money, certain facts may be fixed by a person selected for that purpose in the contract, but the ultimate question as to whether the money shall be paid or not, may be litigated in the courts, and a stipulation to the contrary is void. The fixing of the particular fact by the person or persons named in the contract, and in the manner therein provided, is usually a condition precedent to the bringing of an action on the contract and the performance of such condition should be averred in the petition, or some good excuse given for its performance. Viney v. Bignold, 27 Central Law Journal, 40."

There are several courts that take a contrary view of the question involved. Thus in Rood v. Railway Passenger and Freight Conductor's Mutual Benefit Association, 31 Fed., 62, it was held that a provision of the constitution of a beneficial society that "all claims against the association shall be referred to the board of directors, whose decision shall be final," and that "assessments shall not be made except on its authority," vest the sole power of determining whether the association shall or shall not pay the claim and order an assessment to pay it in the board of directors, and no court can review or

re-examine their decisions in that regard.  In discussing the question, the court said:

"It will be seen that the power of these directors in regard to the allowance of this claim, and ordering an assessment to pay it, is plenary.  They are clothed with full authority to pass upon each and every claim presented against the association, and their decision is final. This is a purely voluntary association.  The members of the association have, by their own organic law, provided a tribunal to hear and determine all claims against it, and I do not think any court can be invoked to review the action of the board in a matter so completely delegated to them.  An attempt to enforce by suit any claim which the board of directors has acted upon or refused to allow or approve, is equivalent to prosecuting an appeal from this board.  It was certainly competent for the members of this association to agree among themselves that the action of their board of directors in reference to any claims presented against the association should be final; and there can be no doubt, from the language of the clause of the constitution just quoted, that they have so agreed."

In the case of Osceola Tribe No. 11, I. O. R. M. v. Schmidt, Admx., 57 Md., 98, the court quoted and approved the following language of the same court in the case of Anacosta Tribe of Red Men v. Murbach, 13 Md., 94:

"These are private beneficial institutions operating on the members only, who, for reasons of policy and convenience, affecting their welfare and perhaps their existence, adopt laws for their government, to be administered "by themselves, to which every person who joins them assents.  They require the surrender of no right that a man may not waive, and are obligatory on him, only so long as he chooses to recognize their authority.  In the present instance, the party appears to have been subjected to the general laws and by-laws according to the usual course, and if the tribunal of his own choice has decided against him, he ought not to complain.  It would very much impair the usefulness of such institutions, if they are to be harassed by petty suits of this kind, and this, probably was a controlling consideration in determining the manner of assessing benefits, and passing upon the conduct of members."

In the case of Ferdinand Van Poucke v. Netherland St. Vincent De Paul Society, 63 Mich. 378, 29 N. W., 863,

plaintiff sued the defendant, a mutual benefit and co-operative association of which he was a member, for money claimed to be due 'him for sick benefits. The by-laws of the company provided for a sick committee, whose duty it should be to investigate and determine whether a member was entitled to such benefit, which decision was to be final, and the committee to be the sole "deciders" of the question. After plaintiff had received assistance for a time he was cited before the committee, and after a hearing, it was decided that he was not entitled to receive any further benefits on account of his injury, of which decision he was duly notified. The by-law was sustained. The court said:

"This charge must be considered with reference to the facts of this particular case. If the by-law was reasonable and valid, not oppressive nor against public policy, it forms a part of the contract, and the plaintiff is bound by its terms. The court below evidently regarded it as a valid by-law, and his charge was based upon that view. This was a mutual benefit co-operative insurance society. The members stood upon an equal footing, and this by-law operates upon all alike. It is reasonable that the sick committee should be invested with authority to determine whether a member claiming to be sick is entitled to the benefit provided for in the by-law, and also when such benefit should cease.

"In a society comprising a numerous membership, deriving its revenues from small monthly contributions, it is of the utmost importance that its business should be carried on inexpensively, and with a proper regard to the object sought to be accomplished. It is necessary that there should be some mode of determining the question of when relief should be given and denied, and the method provided in the by-law seems well adapted to the circumstances and needs of such a society. There is nothing oppressive in the terms of the by-law, and it contains nothing which the policy of the law forbids. If it is enforced in good faith, and with impartiality, which the members pledge themselves to do, it must result in benefit to sick members, and at the same time protect the funds of the society from depletion by the undeserving.

"No charge is made against the committee of having acted oppressively, fraudulently, or otherwise than from upright motives. The construction placed upon the contract entered into by plaintiff in becoming a member of

this society, was correct, and the question of fact bearing thereon was properly left to the jury.''

In the case of Caufield v. Great Camp, K. of M., 87 Mich., 626, 13 L. R. A., 645, 49 N. W., 875, the court applied the doctrine of Van Poucke v. Netherland St. Vincent De Paul Society, *supra*, to a death benefit holding that no distinction could be based upon the fact that in the earlier case the plaintiff was a member claiming sick benefits while in the instant case the plaintiff was not a member and had no voice in the selection of the members of the tribunal.

The same rule was adhered to in Fillmore v. Great Camp, K. of M., 103 Mich. 437, 61 N. W., 785, and Hembeau, v. Great Camp, K. of M., 101 Mich. 161.

In the case of Robinson v. Templar Lodge No. 17, I. O. O. F., 97 Cal., 62, 31 Pac., 609, which was an action against a mutual benefit association to recover a sick benefit, the California supreme court held that the voluntary submission of plaintiff's claim to a tribunal established by the association was in the nature of a submission to arbitration, and that the decision of the tribunal adverse to his claim was in the nature of an award, and should be equally conclusive. The court emphasized the fact that under the by-laws of the society the plaintiff was not obliged to submit his claim to the tribunal, but that, on the contrary, he was not even obliged to make any demand upon the association before commencing an action in a court of law.

And in the case of Railway Conductors Benefit Association v. Robinson, 147 Ill., 138, cited by counsel for plaintiff as sustaining the contrary view, the court, while construing the provisions of the constitution of the mutual benefit association as not making the decision of the board of directors final, took the view that it was competent for such association to so provide.

In the case of Eighmy v. Brotherhood of Railway Trainmen, 113 Iowa, 681, it was held that where the certificate of the brotherhood stipulated that for certain injuries the insured should receive the full amount of the certificate, but that "their claims for total disability" should be referred to certain officers of the order, "who shall decide as to whether or not the disability is of such a nature as to totally and permanently incapacitate the claimant for the performance of duty in any part of the train or yard service; and if the claim is approved by

them the claimant shall receive the full amount'' of the certificate, a decision by such officers as to whether the injuries sustained by the member totally disabled him was final, and if unfavorable, no resort could be had to the courts.

In the case of Sanderson v. Brotherhood of Railroad Trainmen, 204 Pa. St., 182, it was held that where the constitution of the beneficial society provides that the loss of a hand, foot or eye shall be deemed a total disability, but that whether any other injury is to be deemed a total disability shall be determined by a tribunal established by the constitution, a decision of such tribunal is binding upon the members. In discussing the question, the court said:

"Referring to this, the learned judge of the common pleas says in the opinion filed: 'In the case at bar the plaintiff's statement clearly shows that the constitution of the order provides a tribunal to decide the very question now in controversy in this case, to-wit: Whether or not plaintiff's claim amounted to total disability. In accepting the certificate, the plaintiff agreed with the other members of the beneficial order that he would submit this question to the tribunal so constituted. It was a tribunal of his own choice. It was doubtless provided for the express purpose of preventing litigation, and thereby to prevent the funds of the order from being taken and used in defending suits. It is to the interest of every member of the order that this regulation should be enforced. In our opinion, the decision of such tribunal is conclusive upon the plaintiff, and the merits of the decision of such tribunal cannot be inquired into collaterally, whether by action at law or other mode.' On this finding we affirm the judgment.''

In the present case the relief fund is made up of contributions from employees who are members of the association, while any deficit in the amount of money necessary to pay the claims for relief is made up by the railroads. While it is true that the relief association may be of advantage to the railroads, in that the amount contributed by them is not as great as they would have to contribute in the event of suits by the injured employes, it cannot be doubted that the association is also of great benefit to the employees who become members thereof, because under the regulations, they are entitled to relief whether injured through negligence or not. As such asso-

ciations, therefore, serve a beneficent purpose, it should be the policy of the courts to encourage them rather than to discourage them. Here the relief association is voluntary. No employee has to join it. Even after he joins it, he is not deprived of his right in the first instance to sue the railroad company by which he is employed for damages for personal injuries which he may receive. He has the undoubted right either to sue the railroad or to set up a claim for benefits from the relief association. As a condition to relief from the association he agrees to be bound by its regulations. Regulation No. 45 provides for relief where the employee is disabled solely from an accident occurring to him in the performance of his duties in the service of the company, and to which he was assigned or which he was directed to perform by proper authority, or in voluntarily protecting the property of the railroad company; and where his injury is of a permanent character there must be satisfactory evidence that it incapacitates him to earn a livelihood in an employment suited to his capacity. Questions as to the permanent character of disability and the continued payment of benefits on account of the same shall be determined by the Advisory Committee. By regulation 65, the decision of the Advisory Committee is made final. In our opinion, the regulations in question amount to something more than a mere agreement to submit future disputes to arbitration. It is a condition to relief that the question of disability shall be submitted to the Advisory Committee, and that its decision shall be in favor of the employe asking relief. There may be some reason for withholding from such a tribunal the right to pass on such a question where the tribunal is selected by the association or the contributing railroads, and is therefore disposed to look to the interests of the association or the railroads, rather than to the interests of the contributing employees. In the present case, however, such is not the character of the tribunal selected to determine such questions. The Advisory Committee is not selected by the railroad companies alone. It is composed of twelve members, six selected by the railroad companies and six selected by the contributing employees from among their own members. It will be seen, therefore, that the contributing employee not only is represented on the Advisory Committee, but has a voice in selecting his representatives. At the time the Advisory Committee acted Reager's right

to continued relief depended upon whether or not he was still incapacitated to earn a livelihood suited to his capacity. Here was a simple question of fact incident to his right to continued relief. What principle of public policy is contravened by giving to an impartial tribunal the right to pass on such a question? Why are we to assume that the members of such a tribunal, who are interested in the welfare and success of the relief association and know that its success depends upon the fair treatment. of its members, and who frequently come in contact with injured men and are therefore in a better position to determine whether or not their injuries are of such character that they cannot earn their livelihood in employments suited to their capacities, will act unfairly and unjustly in matters that may be submitted to them? The whole trend of modern thought is towards the settlement of such questions outside of court, and it should be the policy of the courts to encourage such settlements rather than to hem them about with restrictions that will make such settlements impossible. One of the very purposes of the association was to do away with the necessity for suits and the great cost of litigation, by providing an impartial tribunal to pass on certain questions. To say either that a party in the first instance need not resort to such a tribunal or that he has the right, after a decision against him on a question of fact such as is here presented, still to resort to the courts, would practically rob the association of its most beneficent feature and defeat the real purpose for which it was formed. The present case well illustrates the inevitable result of such a conclusion. In the first instance Reager submitted his claim for relief to the Advisory Committee. He was granted relief and continued to enjoy it for about ten years. During that time he was paid something like $3,000. According to the amended answer, the same tribunal which granted him the relief in the first instance, and to which he voluntarily submitted his claim at that time, again considered his case, and held that he was not incapacitated to earn a livelihood in an employment suited to his capacity. To say that the last decision of the Advisory Committee is of no effect is to say that an employee is only bound by its decision when it decides in his favor. In other words, he should be permitted to enjoy the benefits of his contract and reject altogether the burdens which it imposes. It is not necessary for us to consider regulations 65 and 45

in any other aspect than as here presented. They give to the Advisory Committee the right to pass on the question of the injured employee's continued disability. This is a question of fact. While we will not apply the doctrine except in cases of voluntary relief association such as the one under consideration, we think it is within the power of such an association to provide for a submission of such question of fact to an impartial tribunal selected by the parties themselves, and make its decision final as to such question, in the absence of a showing of fraud or mistake. By adopting this rule, we give effect to the by-laws in question, and at the same time give to the injured employee the right finally to resort to the courts, where the evidence is clear and convincing that the Advisory Committee was guilty of either fraud or mistake.

It follows that the demurrer to the amended answer should have been overruled.

Judgment reversed and cause remanded for proceedings consistent with this opinion.

Whole court sitting.