**D. B. NORMAN, Appellant,**

v.

**SOUTHERN BELL TELEPHONE & TELEGRAPH COMPANY,**
Appellee.

Court of Appeals of Kentucky.

March 13, 1959.

William E. Scent, Michael J. Clare, Clare & Scent, Louisville, for appellant.

Lively M. Wilson, Stites, Wood, Helm & Peabody, Louisville, Rexford L. Hawkins, Atlanta, Ga., for appellee.

STEWART, Judge.

Plaintiff, D. B. Norman, has been in the employ of defendant since August 20, 1923. On or about October 21, 1955, after thirty-two years of service, he made a request for retirement with pay pursuant to a "Plan for Employees' Pensions, Disability Benefits, and Death Benefits" (herein called "the Plan"), which defendant originally adopted in January, 1913, and has more or less continuously held out to its employees as one of the benefits of their employment.

We shall herein refer to Norman as "plaintiff" and to the defendant, Southern Bell Telephone & Telegraph Company as "the company". The company refused to grant plaintiff a pension. The lower court upheld the company's action, and this appeal is from that ruling.

Section 3(7) of the Plan provides that the expense of administering it shall be borne by the company, and Section 4(9), together with other provisions of the Plan, places the cost of pensions and sickness and death benefits on the company. Its employees are not required to make any contribution to the Plan and plaintiff has never done so.

Section 3(1) of the Plan provides that it is to be administered by the Employees' Benefit Committee, appointed by the board of directors of the company, with headquarters in Atlanta, Georgia. As an aid to more efficient administration of the Plan, a committee has been set up in each state in which the company operates, including

Kentucky, known in this state as the Kentucky Benefit Committee, to review matters arising under the Plan and to make recommendations to the Employees' Benefit Committee. Only the latter, however, is authorized to grant or deny applications for early retirement. In addition to the general authority to administer the Plan, Section 3(3) provides: "It (the Employees' Benefit Committee) shall determine conclusively for all parties all questions arising in the administration of the Plan."

The Plan provides for three classes of pensions. Section 4(1) (a) provides, so far as male employees are concerned, for service pensions upon request by the employee when he has reached sixty years of age and his term of employment has been twenty years or more. Section 4 (1) (c) provides for disability pensions under the terms set forth in that section. Neither of these types of pension is involved in this proceeding. Section 4(1) (b), under which plaintiff made his request for a service pension, reads:

"(b) Any employee whose term of employment has been thirty years or more, or any male employee who has reached the age of fifty-five and whose term of employment has been twenty-five or more years, or any female employee who has reached the age of fifty years and whose term of employment has been twenty-five or more years may, *if the case is approved by the Committee as appropriate for such treatment,* be retired from active service and, upon such retirement, shall be granted a service pension." (Emphasis ours.)

Plaintiff's request for a pension was initiated by a letter, dated October 21, 1955, addressed to W. D. Bales, the district plant manager. The letter stated his desire to retire because "I have a chance to go into business for myself and would like to leave the company". When he submitted his request for early retirement his two superiors, H. L. Morton, the plant manager, and Bales, the district plant manager, wrote letters which accompanied his request, recommending that the retirement be granted. These letters, together with plaintiff's letter and formal application, were forwarded to the Kentucky Benefit Committee by Sam H. Ridgeway, the Kentucky plant manager, who recommended the request for retirement should be denied.

The Kentucky Benefit Committee, which apparently has no official status in the Plan itself but acts merely as a screening agency, considered plaintiff's request for a pension but upon the adverse recommendation of Ridgeway, the Kentucky plant manager, also arrived at the conclusion that his "reason for requesting the pension is not sufficient (and) that his request for a pension should not be recommended". Thereafter the Employees' Benefit Committee, the official committee under the Plan, concurred in the action of the Kentucky Benefit Committee and refused to approve a pension for plaintiff.

Plaintiff first contends the company has failed to adopt reasonable, fair and uniform standards for determining eligibility for retirement under Section 4(1) (b) and that he would be entitled to retirement if uniform standards were applied to his case in a nondiscriminatory manner.

Allene Gray, who is Secretary of the Kentucky Benefit Committee, testified that committee, when it made its adverse recommendation, considered not only the formal application on the printed form supplied by the company, but also the handwritten request of plaintiff and the letters of Bales and Morton hereinabove mentioned. R. V. Davis, Secretary of the official Employees' Benefit Committee, testified that all these matters were also presented to that committee. In essence, he gave as the reasons for the rejection of plaintiff's request, first, the fact that his services were adequate and still needed by the company, and, second, that the committee did not consider there was a sufficient hardship imposed upon him to justify the loss of his services to the company.

He also testified that committee had adopted certain standards with respect to early retirement. According to him, a "Memorandum of Retirement and Service Pensions" had been circulated around November 7, 1955, in which it was, in effect, stated that the committee would consider early retirements in these situations: First, where an employee had been "definitely superannuated" and his efficiency was so unsatisfactory that his service in the same or a different job could no longer be justified; second, where an employee was so physically disabled that reassignment to other duties would not be practicable; third, where an employee's job had been eliminated because of technological changes and he could not be reassigned; and fourth, where an employee's services were terminated by the company itself under circumstances where the committee could justify "handling the case as a retirement rather than a discharge."

In telling how the Employees' Benefit Committee considered these matters, Davis, at one point, said, "Generally speaking, it would depend upon the committee's opinion of the degree of hardship on the part of the employee who applies for the retirement as compared, we will say, to the degree of hardship to the company if the application is approved." He also indicated that the tightness of the labor market might enter into the considerations of the committee. In answer to another question on the point, Davis said that, in his experience, he knew of no case where an early retirement had been granted solely for the purpose of permitting the prospective pensioner to go into private business.

Plaintiff placed much stress on the fact that a pension had been granted in 1947 to Virgil O'Bannon, a company employee, and asserts that if O'Bannon was entitled to early retirement then, applying the same standards now, he should also be accorded the privilege of early retirement. According to Davis' testimony, there were several differences between the two cases. O'Bannon was then fifty-four years of age and he had almost thirty-four years of service. He was operating a farm in which he had already made a considerable investment in stock and equipment, and the committee arrived at the view that, unless O'Bannon could retire at that time, he was threatened with loss of money in the operation of his farm. In the two cases, the committee also emphasized the point that the difficulty in replacing a person of O'Bannon's skill and ability was not nearly so great in 1947 as is the present difficulty of obtaining persons of plaintiff's skill and ability.

■ Under the circumstances we cannot find that the committee has acted in an arbitrary manner in denying Norman a pension. The mere fact that the O'Bannon case, decided about nine years earlier, bears some similarity to the instant case does not justify our reaching the conclusion that the committee was arbitrary in exercising its discretion in one way in the earlier case and in a different way in the later case.

Plaintiff cites several foreign opinions in which a claimant was adjudged entitled to a pension by court decree, even though the persons in charge of the pension fund had denied it. The facts involved in those cases differ from those under consideration here. We have read those opinions and we shall simply state that in each of them the applicant for a pension fulfilled every requirement for eligibility but was refused a pension because of some whim or caprice. It is to be expected any court would set aside and correct any ruling which refused a pension for some reason that is not founded on justice.

■ Plaintiff next maintains it is contrary to law to vest in the Employees' Benefit Committee the right to conclusively determine disputes that arise from claims for a pension. The case of Gatliff Coal Company v. Cox, 6 Cir., 142 F.2d 876, is relied upon to sustain this position, wherein the flat statement is made that the law of Kentucky is to the effect that an agreement of the parties to a contract to arbitrate their disputes is unenforceable because it represents an at-

tempt to oust the courts of their jurisdiction. A much more recent case decided by this Court in 1952, namely, Smith v. Hillerich & Bradsby, Ky., 253 S.W.2d 629, 630, holds to the contrary. We give this excerpt therefrom:

"The law favors and encourages the settlement of controversies by arbitration, and arbitrators are not expected or required to follow the strict rules of law, it being sufficient that they have due regard for natural justice. If the parties wanted exact justice administered according to the forms of law they should not have agreed to substitute a private forum for a court of law." (Citing cases)

█ The final question raised is whether it is appropriate that the Employees' Benefit Committee, which acts somewhat in the capacity of a board of arbitration, should be appointed by, and therefore under the control of, one of the parties to the contract. It must be remembered that, as a part of the continuing offer of pension service to its employees, the company exhibited to them the booklet containing the Plan, and in the Plan was the provision that, in case of early retirement applications, the Employees' Benefit Committee would have the power of exercising its discretion.

Two early cases in Kentucky approved similar situations. The earlier of these is Pennsylvania Co. v. Reager's Adm'r, 152 Ky. 824, 154 S.W. 412, 417, 52 L.R.A.,N.S., 841. This case dealt with the provisions of a voluntary relief association, the forerunner of present day pension plans. One of the regulations provided for final and conclusive settlements of all disputes by reference to the superintendent of the relief department and an appeal to the advisory committee. Six of the latter were appointed by the employer and six by the employees. There, a pension was allowed for a number of years to Reager for the reason that he was considered disabled; but the advisory committee later made a finding that Reager was no longer incapacitated and the question raised before this Court was whether it was legally proper that the controversy be submitted to the advisory committee for arbitration. We said:

"In our opinion the regulations in question amount to something more than a mere agreement to submit future disputes to arbitration. It is a condition to relief that the question of disability shall be submitted to the advisory committee * * *."

In the Reager case this Court was concerned with a pension system under which the employee, as well as the employer, contributed to the cost of the system. A system more analogous to the one involved in the present case was considered by this Court in the case of Stewart v. Wisconsin Steel Co., 183 Ky. 730, 210 S.W. 479, 483. In that case we stated: "Where the fund is contributed entirely by the employer, any rules which he makes regulating the disposition thereof are binding on the employe, so that he has no rights therein except as provided for by such rules."

Among foreign cases which approve the finality of findings by similar committees of pension funds, even though the committees are appointed by the employer, are Western Union Telegraph Co. v. Robertson, 146 Ark. 406, 225 S.W. 649, and Clark v. New England Tel. & Tel., 229 Mass. 1, 118 N.E. 348. Where the employer makes all the payments to the pension fund this rule seems to be universally applied. Only in the event of bad faith can the decision of the pension fund committee be overturned.

█ The rights of employees under a noncontributory pension plan were held to be governed solely by the terms of the plan itself in Hughes v. Encyclopedia Brittanica, Inc., 1 Ill.App.2d 514, 117 N.E.2d 880, 42 A.L.R.2d 456. In an annotation to this case this statement appears: "The courts have usually held that such grants of discretionary authority are effective and binding upon persons claiming benefits so that the decision of the designated authority is not reviewable, at least in the absence of fraud." See 42 A.L.R.2d 456, 472.

100

In the case at bar no fraud was charged. We have already determined, as did the finding of the lower court, that the action of the Employees' Benefit Committee could not be considered arbitrary. Accordingly, we conclude the adverse decision of the committee as to plaintiff's claim for a pension was final and conclusive.

Wherefore, the judgment is affirmed.