**GENERAL ELECTRIC COMPANY,**
Appellant,

v.

**Hazel B. MARTIN, Appellee.**

Court of Appeals of Kentucky.

May 12, 1978.

As Modified On Denial of Rehearing
Aug. 11, 1978.

Discretionary Review Denied
Dec. 19, 1978.

314

Ralph W. Wible, Sandidge, Holbrook & Craig, P. S. C., Owensboro, for appellant.

Charles S. Wible, Lovett, Wible, & Lamar, Owensboro, for appellee.

Before COOPER, GANT and PARK, JJ.

PARK, Judge.

This appeal involves the right of the plaintiff-appellee, Hazel B. Martin, to disability benefits under a pension plan maintained by the defendant-appellant, General Electric Company. Mrs. Martin's claim for disability benefits was denied by the pension board which administers the pension plan. After a full trial in circuit court, a jury returned a verdict that Mrs. Martin was disabled within the meaning of the pension plan and that the decision of the pension board denying her claim had been arbitrary, in bad faith or fraudulent. The circuit court entered a judgment that Mrs. Martin was entitled to a disability pension including past due benefits of $22,910.79.

Throughout these proceedings, General Electric has taken the position that the decision of the pension board was final and conclusive in the absence of clear proof that the denial of Mrs. Martin's claim by the pension board was "arbitrary, in bad faith or fraudulent." General Electric contends that the circuit court should have limited the evidence at trial to the record before the pension board and that the circuit court should have directed a verdict for General Electric.

## FACTUAL BACKGROUND

General Electric has for many years maintained a pension plan providing various benefits for its eligible employees. Under section VII of the plan, a participating employee with fifteen years of service was entitled to a disability pension if the employee became permanently incapacitated for further work. Section VII further provided that:

The decision of the Pension Board as to the existence of disability shall, when supported by the certification of a physician selected by the Pension Board, be final and conclusive.

Section XX provided that the pension plan would be administered by a pension board. All of the members of the pension board were appointed annually by and held office at the pleasure of the Board of Directors of General Electric Company. Under subsection (5)(c) of section XX, the pension board had the power and duty to "make and enforce rules for the efficient administration of the Plan and to decide such questions as may arise in connection with the Plan." Subsection (6) of section XX stated:

The decision or action of the Pension Board in respect of any question arising out of or in connection with the administration, interpretation, and application of the Plan and the rules and regulations thereunder shall be final and conclusive and binding upon all persons having any interest in the Plan.

General Electric contends that Mrs. Martin's claim for a disability pension is barred under these terms of the plan by the adverse decision of the pension board.

Mrs. Martin is a fifty-seven year old woman with a third grade education. Her only employment has been as an assembly line worker at General Electric's Owensboro Plant. Mrs. Martin first went to work for General Electric on February 12, 1948, and for more than twenty-two years she was employed assembling components for electronic receiving tubes used primarily in radio and television sets. She last worked for General Electric on July 24, 1970, when she claims she became incapacitated for further work. On January 22, 1949, Mrs. Martin signed a form application for participation in the General Electric Pension Plan. Un-

der the terms of this printed application form, Mrs. Martin consented to be "bound by all the terms of the Plan." The General Electric Pension Plan provides for employee contributions according to a graduated scale, and the printed application form signed by Mrs. Martin also authorized General Electric to deduct from her compensation the contributions she was required to make to the plan. For most of the years involved, Mrs. Martin's compensation fell below the threshold level at which employee contributions were required. Her total contributions amounted to the relatively modest sum of $426.32.

Mrs. Martin's last day of work with General Electric was July 24, 1970. On August 29, 1970, Mrs. Martin submitted a report from her treating physician, Dr. D. C. Bennett, to the company physician, Dr. Charles Hornaday. Dr. Bennett's report was made on a form furnished to Mrs. Martin by General Electric Company. Dr. Hornaday rejected Dr. Bennett's opinion that Mrs. Martin was disabled. On September 19, 1970, Mrs. Martin submitted the report of a second treating physician, Dr. Duncan Johnson. Dr. Hornaday again rejected Mrs. Martin's claim of disability.

On August 16, 1971, Mrs. Martin submitted a third report from a treating physician, again from Dr. Johnson. On August 18, 1971, Dr. Hornaday for the first time performed a physical examination of Mrs. Martin. He again rejected her claim that she was disabled. Mrs. Martin submitted a fourth treating physician's report on August 27, 1974. This final application for a disability pension was rejected solely on the grounds that her rights as an employee had long since expired.

General Electric never informed Mrs. Martin of her right to appeal Dr. Hornaday's decision to the pension board. There is nothing in the record suggesting that there were any regular procedures governing appeals to the pension board at the time Mrs. Martin submitted her claim. At oral argument, General Electric conceded that the pension board had adopted no procedural rules governing appeals. Mrs. Martin was not aware of her right of appeal to the pension board until after she had filed an action against General Electric Company in the Daviess Circuit Court on February 7, 1975. Her first notice of her rights before the pension board was a motion to dismiss her action filed by General Electric Company on the ground that she had failed to exhaust her administrative remedies.

An agreed order was entered in the circuit court holding the action in abeyance pending action by the pension board. By this time, Dr. Hornaday was deceased. In addition to Dr. Hornaday's rather sparse records concerning Mrs. Martin, the pension board considered the reports submitted by Mrs. Martin from two other physicians. The pension board denied Mrs. Martin's claim at a meeting of the board held in Connecticut.

## GENERAL VALIDITY OF PENSION BOARD DECISIONS

The courts have upheld the general validity of provisions in private pension plans making the decision of administrative boards final and conclusive on all questions of eligibility under the plan. Nevertheless, the courts have also recognized that the decisions of such pension boards are not conclusive in a narrow range of circumstances. These exceptions to the rule favoring the finality of decisions of pension boards have been stated in various ways. Most commonly, the decision of the pension board is said to be conclusive unless it is "arbitrary, fraudulent, or in bad faith." *Wyper v. Providence Washington Insurance Co.*, 533 F.2d 57, 63 (2d Cir. 1976); *see also Matthews v. Swift & Co.*, 465 F.2d 814, 820–21 (5th Cir. 1972); *Norman v. Southern Bell Telephone and Telegraph Co.*, Ky., 322 S.W.2d 95 (1959); *Pennsylvania Co. v. Reager's Adm'r*, 152 Ky. 824, 154 S.W. 412 at 417, 52 L.R.A. (N.S.) 841 (1913); *Gitelson v. Du Pont*, 17 N.Y.2d 46, 268 N.Y.S.2d 11, 215 N.E.2d 336 (1966).[1] The difficulty lies

---

1. Article XXI(6) of the plan provided that the law of New York would govern the construction and administration of the plan. Such provisions are intended to insure uniformity in

not in stating the rule, but in applying it to the facts. Unfortunately, the words "arbitrary, in bad faith or fraudulent" are not particularly helpful.[2]

During oral argument, counsel for General Electric suggested that courts could delineate the circumstances in which a decision of the pension board would not be conclusive by reference to the cases defining the scope of judicial review of decisions of administrative agencies. For example, in *American Beauty Homes Corp. v. Louisville and Jefferson Co. Planning and Zoning Commission*, Ky., 379 S.W.2d 450, 456 (1964), the court held that there were three grounds for judicial review of administrative agencies: (1) the agency was acting outside its statutory powers; (2) the agency failed to afford procedural due process; (3) the decision of the agency was not supported by substantial evidence. We believe that this approach to the problem has much merit. Nevertheless, we must bear in mind that this case involves the action of a private pension plan board, not a statutory administrative agency.

■ The pension plan was a part of the contract between General Electric and Mrs. Martin. She signed a printed application for participation in the plan authorizing the company to withhold her contributions to the plan. Under such circumstances, the pension plan cannot be considered a "gratuity" by the employer providing General Electric's employees no enforceable rights. *Hadden v. Consolidated Edison Co.*, 34 N.Y.2d 88, 356 N.Y.S.2d 249, 312 N.E.2d 445, 449 (1974); *compare Russell v. Princeton Laboratories*, 50 N.J. 30, 231 A.2d 800, 803 (1967), *with Stewart v. Wisconsin Steel Company*, 183 Ky. 730, 210 S.W. 479, 482 (1919).

■ If the pension plan is viewed as a contract between employer and employee, it does not follow that public policy is violated by a provision that the pension board should decide all questions of eligibility under the pension plan. Such provisions have the salutary purpose of providing a speedy decision without the great expense of litigation. *Pennsylvania Company v. Reager's Adm'r, supra*, 154 S.W. at 417. Nevertheless, the pension plan is not the result of bargaining between sophisticated and knowledgeable businessmen concerning a financial transaction of considerable magnitude. *See Fite & Warmath Construction Co. v. MYS Corp.*, Ky., 559 S.W.2d 729, 735 (1977). We are dealing with an adhesion contract. Mrs. Martin had no choice respecting the terms and provisions of the pension plan. She was presented the plan on a take-it or leave-it basis. Although Mrs. Martin agreed to participate in the plan and authorized the company to withhold her contribution, it is totally unrealistic to say that Mrs. Martin assented to the provisions relating to the conclusive nature of the decision of the pension board. *See Davis v. Humble Oil & Rfg. Co.*, La.App., 283 So.2d 783, 787 (1973). Under circumstances such as these, the employees rely upon the skill and good faith of the employer to provide a fair pension plan affording a degree of financial security. *Cf. Pennsylvania Life Insurance Co. v. McReynolds*, Ky., 440 S.W.2d 275, 278 (1969).

---

administration of pension plans of multi-state corporations. *Davis v. Humble Oil & Rfg. Co.*, La.App., 283 So.2d 783, 794 (1973). As a matter of Kentucky Law, the provision is valid. *Big Four Mills v. Commercial Credit Co.*, 307 Ky. 612, 211 S.W.2d 831, 836–37 (1948); *Restatement (Second) of Conflicts of Law* § 187, comment *b* (1971). However, the parties have cited both New York and Kentucky cases without distinction, and we find no significant difference between the law of the two states.

**2.** In discussing statutes authorizing judicial review of administrative boards on the issues of "bad faith, fraud or misrepresentation," the court stated that it was "difficult to grasp exactly what the legislature had in mind." The court concluded that these issues were apparently "within the compass of arbitrariness." *American Beauty Homes Corp. v. Louisville and Jefferson County Planning and Zoning Com'n*, Ky., 379 S.W.2d 450, 456 n.12 (1964). For another case presenting the problem of stating a practical, rather than merely a rhetorical, definition of "bad faith," see *Manchester Insurance and Indemnity Co. v. Grundy*, Ky., 531 S.W.2d 493 (1975).

From the point of view of General Electric, the pension plan was intended to attract competent employees who would be induced to render long term service to the company. *See Whitley v. Mammoth Life and Accident Insurance Co.*, Ky., 273 S.W.2d 42, 43 (1954). On the other hand, Mrs. Martin and other employees covered by the plan sought some financial security in the event of disability. Because there was no specific assent to the printed "boiler-plate" provisions of the plan relating to the power of the pension board to make a final and conclusive decision, those provisions should be construed in such a way as to carry out, rather than defeat, the express agreement of the parties that Mrs. Martin would participate in a pension plan providing disability benefits. K. Llewellyn, *The Common Law Tradition: Deciding Appeals* 362–71 (1960). *Restatement (Second) of Contracts*, § 237, comment *c* (Tentative Draft nos. 1–7, revised and edited 1973). The pension plan contract should be construed to impose a duty of "good faith and fair dealing" upon General Electric in administering the plan through the pension board. *Kirke La Shelle Co. v. Armstrong Co.*, 263 N.Y. 79, 188 N.E. 163, 167 (1933); *Eline Realty Co. v. Foeman*, Ky., 252 S.W.2d 15, 18 (1952); *Restatement (Second) of Contracts* § 231 (Tentative Draft nos. 1–7, revised and edited 1973); *cf. Manchester Insurance & Indemnity Co. v. Grundy*, Ky., 531 S.W.2d 493, 498 (1975). Before General Electric can defend an action for a disability pension on the ground that the decision of the pension board is final and conclusive, the pension board must have acted in the spirit that justifies its encouragement by the law, namely to afford a prompt and impartial decision. *Continental Insurance Co. v. Vallandingham & Gentry*, 116 Ky. 287, 25 Ky.L.Rep. 468, 76 S.W. 22 at 24, 105 Am.St.Rep. 218 (1903). Good faith and fair dealing require that the pension board be operated for the benefit of both employee and employer.

We conclude that there are three possible grounds for refusing to enforce the provisions of the plan making the decision of the pension board final and conclusive.

These three grounds are analogous to the grounds for judicial review of decisions of administrative agencies enunciated in the *American Beauty Homes* case. First, the decision of a pension board should not be enforced if the board was acting outside of the powers granted to it by the pension plan. Second, the decision of the pension board should not be enforced if the procedures for deciding the employee's claim were not fair and impartial. The party before an administrative agency is entitled to procedural due process. If an employee must surrender his right to a court adjudication of his contract claim to a disability pension, then good faith dictates that the employer afford the employee appropriate procedural safeguards. Third, unless the decision of the pension board is supported by the evidence or other information available to the board, that decision will be deemed arbitrary and unenforceable.

In the present case, there is no contention that the pension board was acting outside of the powers conferred upon it by the pension plan. Consequently, there are only two questions to be decided: (1) Was the decision of the board denying Mrs. Martin's claim supported by the record before the board? (2) Did the procedures of the pension board afford Mrs. Martin a fair and impartial hearing on her claim?

## WAS THE DECISION OF THE PENSION BOARD SUPPORTED BY THE RECORD?

At the trial of the case, the circuit court permitted Mrs. Martin to introduce medical evidence respecting her disability claim which she had not submitted to Dr. Hornaday or to the pension board. General Electric claims that this procedure was improper because Mrs. Martin was not entitled to a de novo hearing in circuit court. It is General Electric's position that Mrs. Martin was limited to the record considered by the pension board for the purpose of deciding whether the board's finding of nondisability was arbitrary. We agree.

If the employee may introduce new and additional medical testimony in circuit court, there is no incentive for the employee to make a full disclosure to the pension board. Only in that way, can the pension board provide a prompt and inexpensive means of determining eligibility questions under a pension plan. If the employee is free to retry the entire issue in circuit court, the very purpose of having a pension board will be defeated.

When there is no question respecting the fairness or impartiality of the proceedings, the employee should be confined to the record made before the pension board. *Davis v. Humble Oil & Rfg. Co., supra,* 283 So.2d at 793–95; *cf. City of Louisville v. McDonald,* Ky., 470 S.W.2d 173, 179 (1971); *City of Louisville v. Kavanaugh,* Ky., 495 S.W.2d 502, 505 (1973).

■ In this case, there is no dispute respecting what matters were considered by the board. Consequently, whether the record supported the pension board's decision was a question of law for the court, rather than a question of fact for the jury. *See House v. Kellerman,* Ky., 519 S.W.2d 380, 382–83 (1975); *Manchester Insurance & Indemnity Company v. Grundy, supra,* 531 S.W.2d at 500. On this issue, Mrs. Martin was not entitled to introduce new and additional medical testimony respecting her alleged disability.

■ The following test should be applied in determining whether the decision of the pension board was supported by substantial evidence: was the evidence before the board of Mrs. Martin's disability so overwhelming that reasonable men could not reach an honest decision that she was not disabled? *Marsh v. Greyhound Lines,* 488 F.2d 278, 280 (5th Cir. 1974); *cf. Thurman v. Meridian Mutual Insurance Co.,* Ky., 345 S.W.2d 635, 639 (1961). Applying this test to the record before the pension board, we conclude that the board's decision that Mrs. Martin was not disabled was supported by substantial evidence.

Mrs. Martin's initial claim was based upon Dr. Bennett's report that she was suffering from "moderate" pulmonary emphysema and "generalized osteoarthritis of the cervical and lumbar spine." In answer to an inquiry from Dr. Hornaday, Dr. Bennett further reported that x-rays of the lumbar spine showed "minimal" hypertrophic arthritis with anterior lipping. Although Dr. Johnson reported that she was suffering from "severe" disabling hypertrophic arthritis, a report from Dr. Sparks referred to x-rays taken December 5, 1972, which showed only "moderate" osteoarthritis. After his examination of Mrs. Martin on October 18, 1971, Dr. Hornaday reported:

> I do not doubt that this lady has some arthritis, but substantiating evidence is lacking and her symptoms are markedly exaggerated.

Mrs. Martin also supplied the board with a report from Dr. Leatherman, dated March 4, 1974. In the opinion of Dr. Leatherman, Mrs. Martin had "some permanent disability as a result of multiple joint problems." X-rays taken by his office showed "some" arthritic spurring and "some" arthritic changes and degeneration. His diagnosis of Mrs. Martin was multiple bursitis and tendinitis.

The pension board could have found from the record before it that Mrs. Martin was disabled. However, the evidence was not so overwhelming that it was compelled to find that she was "permanently incapacitated for further work" within the meaning of the pension plan. We hold that there was substantial evidence in the record to support the board's finding that Mrs. Martin was not permanently incapacitated from further work at any time prior to July 24, 1971, the date when her service with General Electric was broken. In this sense, the decision of the pension board was not arbitrary. Therefore, the decision of the board is final and conclusive unless Mrs. Martin was not afforded an impartial hearing before the pension board.

## WERE THE PROCEDURES OF THE PENSION BOARD FAIR AND IMPARTIAL?

■ When there is a question respecting the fairness or impartiality of the proceed-

ings before the pension board, the employee cannot be confined to the record made before the board. In this case, the circuit court properly allowed Mrs. Martin to introduce evidence at trial going to this issue. This does not mean that the trial in circuit court becomes a de novo hearing. The only issue before the pension board was the question of Mrs. Martin's disability. The proceedings in circuit court were the first opportunity for Mrs. Martin to question the manner in which General Electric administered the functions of the pension board.

 Unless General Electric afforded Mrs. Martin a fair and impartial hearing before the pension board, General Electric is not entitled to enforce the provisions of the pension plan making the decision of the pension board final and conclusive. If General Electric breached its duty to Mrs. Martin of good faith and fair dealing in the administration of the pension plan, the company is not entitled to defend her action on the ground that the decision of the pension board is conclusive. The record of the proceedings in circuit court establishes as a matter of law that General Electric administered the proceedings of the pension board for its sole benefit without any consideration being given to the rights and interests of its employee, Mrs. Martin.

 We first note the composition of the pension board. All of the members of the board are appointed by and hold office at the pleasure of the board of directors of General Electric. The decisions of a pension board are not unenforceable solely because the board is employer dominated. In *Norman v. Southern Bell Telephone and Telegraph Company, supra,* the court upheld the decision of a pension board even though all of the members were appointed by the directors of the employer. However, it should be noted that the contributions to the pension plan in the *Norman* case were made solely by the employer without any contribution by the employees. In upholding the decision of a committee administering a contributory plan, the court stated in *Pennsylvania Co. v. Reager's Adm'r, supra,* 154 S.W. at 417:

There may be some reason for withholding from such a tribunal the right to pass on such a question where the tribunal is selected by the association or the contributing railroads, and is therefore disposed to look to the interests of the association or the railroads, rather than to the interests of the contributing employes. In the present case, however, such is not the character of the tribunal selected to determine such questions. The advisory committee is not selected by the railroad companies alone. It is composed of 12 members, six selected by the railroad companies and six selected by the contributing employes from among their own members. . . . What principle of public policy is contravened by giving an impartial tribunal the right to pass on such a question?

The unrepresentative composition of the pension board does not encourage judicial deference to its decisions. *Russell v. Princeton Laboratories, supra,* 231 A.2d at 805. Despite the unrepresentative composition of the pension board, the decisions of the board could be deemed conclusive if the board, in fact, functioned in a fair and impartial manner for the benefit of both employer and employee.

Mrs. Martin made four applications for disability benefits. On each occasion, she submitted an examining physician's report on a form furnished by her employer. At the bottom of this form, there was a place for the company physician to indicate whether he did or did not agree with the opinion of the examining physician. The company physician was not required to give any reason if he disagreed with a disability diagnosis of the employee's treating physician. Nevertheless, Dr. Hornaday indicated on one occasion that x-rays did not substantiate Mrs. Martin's claim. On another occasion, he conducted a physical examination of Mrs. Martin. Dr. Hornaday denied Mrs. Martin's application on three occasions. At no time was Mrs. Martin informed that she had the right to appeal Dr. Hornaday's decision to the pension board. In fact, she was completely unaware of the existence of the pension board.

When Mrs. Martin submitted a fourth application for disability benefits, General Electric gave no consideration to her claim. Her application was returned with the following explanation:

> Your insurance and service records indicate your last day of work was July 24, 1970, and your service was broken on July 24, 1971. During this time you made application for disability pension which was denied as the information furnished did not indicate your disability to be total and permanent.

> Your recall rights expired on July 24, 1973, and as of that date your service was terminated. Prior to your termination you filed applications for a disability pension on three different occasions. Each time they were denied as the information they contained was not conclusive as to your total and permanent disability. The Examining Physicians Report forms that you sent to me are enclosed.

This letter dated September 17, 1974, rejecting Mrs. Martin's claim is in complete conflict with the idea that Mrs. Martin was entitled to a fair and impartial hearing before the pension board for the purpose of reviewing Dr. Hornaday's decisions.

There was one very practical reason why Mrs. Martin was never notified of her right of appeal to the pension board. It appears that the pension board had never adopted any rules or procedures to be followed by an employee desiring to appeal to the pension board. The first notice General Electric ever gave to Mrs. Martin of her right to appeal Dr. Hornaday's decision to the pension board was the motion to dismiss her complaint in circuit court on the ground that she had failed to exhaust her administrative remedies. In the case of Mrs. Martin, the pension board was used by General Electric as a defense to her lawsuit, rather than as a prompt and impartial means of determining the validity of her disability claim.

Unfortunately, Mrs. Martin's experience in prosecuting her claim is not unusual. In enacting the Employee Retirement Income Security Act of 1974 (ERISA), Congress found that a "substantial number" of plans failed to provide adequate and fair procedures to employees when benefit claims were denied. S.Rep.No. 93–127, 93d Cong., 1st Sess., *reprinted in* [1974] U.S.Code Cong. and Admin.News pp. 4838, 4870. In order to correct this situation, ERISA requires every plan to provide adequate notice in writing to any employee whose claim has been denied setting forth the specific reasons for the denial. In addition, the employee must be given a reasonable opportunity for a full and fair review of this decision. 29 U.S.C. § 1133.

When the pension board finally considered Mrs. Martin's case in 1975, Mrs. Martin had no realistic opportunity to question Dr. Hornaday's decision because he died in the interim. The board met in Connecticut with the Assistant Medical Director of General Electric, Dr. Pocock, who assisted the pension board by interpreting the various medical records in Mrs. Martin's file.

The actions of General Electric Company frustrated the principal purpose of a pension board, namely a prompt and impartial decision without the expense of litigation. General Electric delayed almost four years before invoking the provisions of the pension plan relating to the board. We conclude that General Electric did not deal fairly with Mrs. Martin in the spirit that would justify enforcing the provision of the plan making the decision of the pension board final and conclusive. Under the circumstances of this case, General Electric cannot defend Mrs. Martin's claim on the basis of the decision of the pension board. *See Continental Insurance Co. v. Vallandingham & Gentry, supra,* 76 S.W. at 24.

At oral argument, counsel for General Electric suggested that, in the event this court held that Mrs. Martin had been denied a fair and impartial hearing, the proper remedy would be remand to the pension board. Cited by way of analogy were cases involving appeals from administrative agencies which had failed to afford due process hearings. *E. g. Morris v. City of Catlettsburg,* Ky., 437 S.W.2d 753, 755–

322

56 (1969). This argument ignores a very real difference between administrative agencies and private pension boards. Administrative agencies are created by statute, and they frequently decide matters which are outside the judicial function of courts. In such cases, remand is the only solution. On the other hand, the private pension boards are creatures of contract. When there has been a breach of the underlying contract by failure to afford a fair and impartial hearing, there is no need or reason to remand the matter back to the pension board. The issues to be decided are within the general jurisdiction of the courts.

### RULING

Because there was a breach of the implied condition that Mrs. Martin would be afforded a fair, prompt and impartial hearing before the pension board, General Electric cannot invoke the provisions of the pension plan making the decision of the board final and conclusive. Therefore, the circuit court did not err in granting Mrs. Martin a de novo hearing on the issue of her disability.

There was ample evidence upon which the jury could find that Mrs. Martin was disabled within the meaning of the pension plan. Her treating physician, Dr. Johnson, testified that Mrs. Martin was suffering from cervical arthritis which rendered her incapacitated to perform her work at General Electric. There was extensive other medical evidence that Mrs. Martin was suffering from arthritis in the cervical spine which would prevent her from being able to do her former work at General Electric Company. The evidence supports the verdict of the jury that Mrs. Martin was permanently incapacitated for further work.

The judgment of the circuit court is affirmed.

All concur.